O P I N I O N
These appeals are taken from a final judgment of the Lake County Court of Common Pleas. Appellant/cross-appellee, Jennifer Roht, appeals from the trial court's decision to assess prejudgment interest against her as the party required to pay money in a negligence action.[1] Appellee/cross-appellant, Edward Cek, appeals from the trial court's selection of a commencement date for the running of the prejudgment interest award.[2]
On November 14, 1995, appellant was attempting to exit a restaurant parking lot by turning left onto State Route 91 in Willoughby, Ohio. The point at which appellant wished to enter the flow of traffic was in close proximity to a busy intersection with two lanes of travel in both directions. At the time, the traffic light at the intersection was red. Consequently, the vehicles in the first lane directly in front of the restaurant parking lot were in the stopped position; however, there was no line of traffic backed up in the second lane.
A motorist in the lane closest to appellant made a hand motion indicating that appellant could exit the parking lot if she desired. Appellant accepted the offer and cautiously began to roll into the first lane of traffic. As she did so, the light at the intersection turned green for the two lanes which appellant needed to cross in order to execute the left turn. Despite this, appellant continued to effectuate the left turn under the apparent belief that no vehicle was immediately oncoming in the second lane. Upon entering this lane, however, appellant pulled directly into the path of a truck being driven by appellee. A collision ensued as appellee's vehicle struck the front left side of the automobile operated by appellant. Following the accident, the police issued a citation to appellant for failure to yield the right of way.
Appellee retained counsel to pursue compensation for his injuries, whereupon his counsel entered into discussions with a claims representative who worked on behalf of Old Republic Insurance Company ("Old Republic"). Old Republic had previously issued an automobile liability insurance policy to Eastman Kodak Company, which was appellant's employer at the time of the accident. Despite various correspondence between counsel and the insurance representative, no settlement could be reached regarding appellee's claim for damages.
As a result, on January 20, 1997, appellee filed a civil complaint in the trial court. The complaint named appellant and the D.L. Peterson Trust as defendants.[3] The latter was named as a party to the action because it owned the vehicle which was being operated by appellant at the time of the accident. As grounds for the lawsuit, appellee alleged that he had suffered various physical injuries and related medical expenses as a proximate result of appellant's negligent operation of her vehicle. Appellant filed an answer in which she expressly denied operating the automobile in a negligent manner.
On April 8, 1997, counsel for appellant filed a notice with the trial court indicating that various interrogatories and a request for production of documents had been served upon appellee. Shortly thereafter, appellant's counsel sent a letter to counsel for appellee requesting that the latter provide a written settlement demand.
After several months had passed, the attorneys filed a joint stipulation in which they agreed that appellee should be afforded additional time in which to respond to the interrogatories and the demand for production of documents. Subsequently, on June 30, 1997, counsel for appellee filed a notice with the trial court indicating that appellee had submitted his responses to appellant's discovery requests. Counsel for appellee, however, never submitted a written settlement demand to appellant's attorney. In addition, several of the interrogatories that had been propounded to appellee were returned unanswered with no accompanying explanation as to why they had been left blank.
On September 15, 1997, the matter came on for a pretrial hearing. During this proceeding, the trial court addressed lingering discovery problems as raised by appellant's counsel. In addition, counsel for appellee made an oral offer to settle the pending litigation for $40,000. This was the first monetary offer to settle the case made by either party. Appellant's counsel advised the trial court that his client could not make an informed counter-offer of settlement until all of appellee's medical records had been turned over for review.
Thereafter, on October 24, 1997, the trial court ordered that the action be referred to a compulsory arbitration panel pursuant to the Rules of Practice of the Lake County Court of Common Pleas. During the succeeding months leading up to the arbitration hearing, appellant's counsel continued to make discovery requests pertaining to the release of medical reports from various physicians who had examined appellee. Appellant's counsel also deposed appellee regarding the accident and the extent of his injuries on March 26, 1998.
Before the case went to arbitration, the D.L. Peterson Trust filed a motion for summary judgment pursuant to Civ.R. 56 on the ground that appellee could not prevail as a matter of law on his claim of negligent entrustment. Appellee did not file a brief in opposition to the motion. Upon consideration of the submitted materials, the trial court granted summary judgment in favor of the D.L. Peterson Trust, thereby dismissing that entity as a party to the litigation.
The matter finally came before the arbitration panel on May 27, 1998. Appellee was present at the proceeding and testified before the panel. Appellant was unable to attend the hearing, but counsel argued the case on her behalf and introduced various evidentiary exhibits. The panel found appellant to be liable for the accident and awarded the statutory arbitration limit of $30,000 to appellee.
Neither party appealed the decision of the arbitration panel. As a result, the trial court adopted the arbitration award and entered judgment against appellant in the sum of $30,000. This judgment was entered on July 14, 1998. Subsequently, on July 29, 1998, appellee filed a motion requesting that he be awarded prejudgment interest on the $30,000 judgment. Appellant filed a brief in opposition to the motion.
On August 17, 1998, appellee filed a supplemental complaint in the trial court pursuant to R.C. 3929.06. The supplemental complaint named appellant and Old Republic as defendants. The basis of the complaint was the fact that appellee had not received payment of the $30,000 judgment from appellant within thirty days of the trial court's July 14, 1998 judgment. Consequently, appellee sought payment from Old Republic as the insurer of the vehicle which appellant was driving at the time of the accident.
Appellant filed a motion to dismiss the supplemental complaint on September 17, 1998. As grounds for the motion, appellant asserted that her counsel had forwarded a check to appellee for $30,000 on the same day that the supplemental complaint was filed, to wit: August 17, 1998. In addition, counsel had sent a check to appellee for $279.14 on September 2, 1998 as payment for postjudgment interest on the $30,000 award. Copies of the two checks were appended to the motion.
Appellee filed a response in which he agreed that the supplemental complaint should be dismissed because appellant had paid the judgment. Appellee requested, however, that the costs associated with the filing of the supplemental complaint be assessed against appellant. Appellee made this request based on the fact that the $30,000 check had actually been issued by Old Republic on June 17, 1998, but appellant's counsel did not forward the check until the supplemental complaint had been filed in the trial court. On October 20, 1998, the trial court issued a judgment entry dismissing the supplemental complaint and assessing the costs thereof to appellant.
The motion for prejudgment interest came on for hearing before the trial court on December 23, 1998. Counsel for both parties attended and presented oral arguments to the trial court. At the close of this proceeding, the trial court ruled that it intended to award prejudgment interest to appellee for the period commencing on September 22, 1997 through the entry of the $30,000 judgment on July 14, 1998. The trial court selected September 22, 1997 as the start date for the prejudgment interest award because it was one week after appellee's counsel had extended the oral settlement offer to appellant's counsel during the course of the September 15, 1997 pretrial hearing. The trial court entered judgment to this effect on January 13, 1998.
From this judgment, appellant filed a timely notice of appeal with this court. She now asserts the following assignments of error:
 "[1.] The trial court erred in granting appellee/cross-appellant's motion for prejudgment interest, court costs therefor, and post-judgment interest thereafter.[4]
 "[2.] The trial court erred in awarding appellee/cross-appellant prejudgment interest and/or the costs of his supplemental complaint pursuant to the trial court's judgment of July 14, 1998, because said judgment was not entered in conformance with R.C. 4123.931."
Appellee filed a timely notice of cross appeal from the same judgment. He now asserts the following assignment of error on cross appeal:
 "The trial court erred in failing to award plaintiff prejudgment interest from the date plaintiff's cause of action accrued."
Before addressing the substance of the assigned errors, we begin by discussing the prejudgment interest statute and the appropriate standard of review. At the time appellee commenced his civil action against appellant, R.C. 1343.03(C) read:
 "(C) Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid, if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case."[5]
The purpose of R.C. 1343.03(C) is "to encourage litigants to make a good faith effort to settle their case, thereby conserving legal resources and promoting judicial economy." Peyko v. Frederick
(1986), 25 Ohio St.3d 164, 167. The Supreme Court of Ohio has observed that:
 "[t]he statute was enacted to promote settlement efforts, to prevent parties who have engaged in tortious conduct from frivolously delaying the ultimate resolution of cases, and to encourage good faith efforts to settle controversies outside a trial setting." Kalain v. Smith (1986), 25 Ohio St.3d 157, 159.
In Moskovitz v. Mt. Sinai Med. Ctr. (1994), 69 Ohio St.3d 638, the Supreme Court of Ohio held that R.C. 1343.03 establishes certain requirements. First, a party seeking prejudgment interest must petition the court for such interest within fourteen days after entry of judgment.[6] The decision is one for the trial court, not the jury. Second, the trial court must hold a hearing on the motion. Third, before awarding prejudgment interest, the trial court must find that the party required to pay the judgment failed to make a good faith effort to settle. Fourth, the trial court must find that the party to whom the judgment is to be paid did not fail to make a good faith effort to settle the case. Moskovitz,69 Ohio St.3d at 658.
R.C. 1343.03 uses the mandatory word "shall," as opposed to the discretionary term "may." Therefore, if the four requirements of the statute are satisfied, the decision to order the payment of prejudgment interest is not within the trial court's discretion.Id.
The real crux of the statute, however, is whether the party required to pay the money failed to make a "good faith effort" to settle the case and whether the party to whom the money is to be paid did not fail to make a similar "good faith effort" to settle the case. Since determinations going to the existence of a good faith effort or the lack thereof are within the trial court's discretion, "the ultimate decision whether to award prejudgment interest is reposed in the trial judge[.]" Id. Therefore, the standard of review on appeal is whether the trial court abused its discretion. Id.
As noted in Moskovitz, the obvious question to be asked is what constitutes a good faith effort or, conversely, when has a party failed to make a good faith effort to settle the litigation? The Supreme Court of Ohio has attempted to develop a judicial standard of good faith governing motions for prejudgment interest under R.C. 1343.03(C). In Kalain, supra, the court held:
 "A party has not `failed to make a good faith effort to settle' under R.C. 1343.03(C) if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer." Kalain, 25 Ohio St.3d 157, at syllabus.
The effect of Kalain is to place the burden of proof on the party seeking prejudgment interest. Moskovitz, 69 Ohio St.3d at 659. The factors enumerated in Kalain, and others where appropriate, should be considered by a trial court in making a prejudgment interest determination.
Accordingly, it is incumbent on the moving party to present evidence that he or she made a written or equally persuasive settlement offer to the defendant(s) which was reasonable in light of such factors as the nature of the case, the injuries involved, and the applicable law. Moreover, it will generally be insufficient for the moving party merely to make subjective claims of lack of good faith on the part of the party required to pay the money. The statutory phrase "failed to make a good faith effort to settle," however, does not mean that the party required to pay the money acted in "bad faith." Moskovitz, 69 Ohio St.3d at 659. Indeed, the nonmoving party may have failed to make a good faith effort to settle the case, even though he or she did not necessarily act in bad faith.
We turn now to the assigned errors. In order to simplify our analysis, we will consider the assignment of error raised by appellee on cross appeal in the context of addressing appellant's first assignment of error.
In her first assignment of error, appellant posits that the trial court abused its discretion by awarding prejudgment interest to appellee. In this regard, she offers two reasons as to why the trial court's judgment should be reversed.
First, appellant maintains that it was not possible for the trial court to have reasonably found that she, as the party required to pay the judgment, failed to make a good faith effort to settle. In this vein, appellant argues that the uncontroverted evidence demonstrated the following with respect to the factors listed in Kalain: (1) that she fully cooperated during the discovery proceedings by submitting her answers to appellee's discovery requests within the stipulated time frames; (2) that she rationally evaluated her risks and potential liability by deposing appellee, by seeking the release of all pertinent medical records relating to the treatment of appellee for injuries stemming from the automobile accident, and by requesting a written settlement demand from appellee's counsel; (3) that she did not unnecessarily delay any of the proceedings as demonstrated by the fact that she neither objected to the matter being referred to arbitration nor appealed the resulting arbitration award; and (4) that she was not required to make a monetary settlement offer because she possessed a good faith, objectively reasonable belief that she was not solely liable for the accident.
As to this last point, appellant contends that appellee appeared to be traveling at a high rate of speed just before the collision. If appellee was unlawfully operating his truck in excess of the posted speed limit, then appellant suggests that he may have forfeited his right of way to the lane on State Route 91 which appellant entered as she executed her left turn. Moreover, appellant claims that she had an objectively reasonable belief that she exercised ordinary care in the operation of her vehicle because she was only inching slowly into appellee's lane of traffic immediately before the collision. For these reasons, appellant takes the position that she was not obliged to propose a settlement offer to appellee based on the authority of the last sentence of the Kalain syllabus, to wit: "If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer."
Appellant advances a second reason as to how the trial court abused its discretion in awarding prejudgment interest to appellee. Specifically, appellant argues that there was a plethora of evidence demonstrating that appellee, as the party to whom the money was to be paid, failed to make a good faith effort to settle the case. In this regard, appellant recites several examples, including the following assertions: (1) appellee engaged in a litany of dilatory discovery tactics such as providing incomplete responses to interrogatories and delaying the release of medical records; and (2) appellee never made a written settlement demand, and he waited too long in making the oral settlement offer of $40,000 at the September 15, 1997 pretrial hearing.
In its judgment entry granting the motion for prejudgment interest, the trial court did not offer any explanation as to the reasoning underlying its decision. Rather, the trial court simply stated that "* * * Plaintiff is granted prejudgment interest at the statutory rate of 10% commencing on September 22, 1997 and concluding on July 14, 1998, plus post judgment [sic] interest thereafter and court costs of this motion." However, a review of the transcript from the December 23, 1998 hearing on the motion for prejudgment interest sheds light on the trial court's thinking.
During this proceeding, the trial court noted that if it awarded prejudgment interest to appellee in addition to the postjudgment interest which had already been paid, then R.C.1343.03(C) mandated that such interest had to be computed from the date the cause of action accrued to the date of the judgment ordering the payment of money. In this regard, the trial court observed:
 "The statute which I reviewed this morning, looks to be a do it or don't type of statute. You will go all the way back to the tortious conduct, to the date of judgment or give no interest. Looks like one way or another."
The trial court was correct in this observation. Having recognized this point of law, however, the trial court then proceeded to deviate from it. Instead of awarding prejudgment interest from the date the cause of action accrued on November 14, 1995 (i.e., the date of the accident) to the date of the July 14, 1998 decree entering judgment against appellant for $30,000, the trial court selected September 22, 1997 as the commencement date for calculating such interest. The trial court chose this date because it was one week after the September 15, 1997 pretrial hearing at which appellee's counsel made the oral settlement offer of $40,000.
The trial court's selection of this date is at the crux of appellee's cross appeal. In his assignment of error on cross appeal, appellee asserts that the trial court erred as a matter of law by deviating from the mandate in the prior version of R.C.1343.03(C) that prejudgment interest "shall be computed from the date the cause of action accrued[.]" From appellee's perspective, the trial court was statutorily compelled to award him prejudgment interest dating back to the day of the accident on November 14, 1995.
Appellee is correct. In Musisca v. Massillon Community Hosp. (1994), 69 Ohio St.3d 673, the Supreme Court of Ohio considered the specific question of whether the language of R.C. 1343.03(C) allowed any room for the trial court to adjust the point in time at which an award of prejudgment interest should begin to run depending on the equities of the situation. The court held:
 "The provision of R.C. 1343.03(C) that a prejudgment interest award begins to run on the date the cause of action accrued is mandatory; a trial court may not adjust the date the award begins to run for equitable reasons." Musisca, 69 Ohio St.3d 673, at syllabus.
In arriving at this conclusion, the Musisca court ruled that the use of the word "shall" in the statute was determinative. Accordingly, the court opined that the decision as to when an award of prejudgment interest should begin to run is not discretionary and such interest, if awarded, had to be calculated from the date the cause of action accrued.[7] Id. at 676.
In light of Musisca, it is obvious that the trial court erred by selecting September 22, 1997 as the commencement date for the awarding of prejudgment interest. Appellee's assignment of error on cross appeal is well-taken.
This leads us back to the question presented by appellant's first assignment, to wit: did the trial court abuse its discretion by awarding prejudgment interest to appellee? After having reviewed the transcript of the motion hearing, it is obvious that the trial court did not engage in the analysis required by R.C.1343.03(C). Specifically, the trial court did not determine whether appellant, as the party required to pay the money, failed to make a good faith effort to settle the case and whether appellee, as the party to whom the money was to be paid, did not fail to make a good faith effort to settle the case.
Instead, the trial court effectively decided to split the difference by awarding prejudgment interest dating back to September 22, 1997, rather than the date of the accident on November 14, 1995. In this way, each party essentially got "half of a loaf" so to speak. Although appellant was ordered to pay some prejudgment interest, she was not compelled to pay interest from the date the cause of action accrued as required by the statute. Likewise, although appellee did not receive prejudgment interest from the day of the accident, he garnered at least some interest when the trial court had the discretion to deny the motion entirely.
The trial court ostensibly recognized that the decision as to when an award of prejudgment interest should begin to run is not discretionary, and such interest, if awarded, had to be calculated from the date the cause of action accrued. Despite this, the trial court deviated from the statute by selecting September 22, 1997 as the date upon which prejudgment interest began to run in the instant matter. In doing so, the trial court essentially acknowledged that it was avoiding the "good faith" analysis required by R.C. 1343.03(C). Indeed, the trial court stated:
 "And I don't believe that's in conformance with [the] statute and I believe I can get reversed by either side in this case. And if it comes back, I will make a decision at that time [regarding the good faith settlement efforts of the respective parties]. Unless the Court of Appeals decides to make that decision for me."
Although we appreciate the invitation, this court declines to resolve the good faith determinations required by R.C. 1343.03(C). The trial court is in a better position to adjudge whether appellant failed to make a good faith effort to settle the case and whether appellee did not fail to make a similar good faith effort to settle the dispute prior to the arbitration hearing. As stated previously, determinations as to the existence of a good faith effort are within the province of the trial court, and the ultimate decision whether to award prejudgment interest rests with the trial judge. After the trial court has made the requisite determinations in the casesub judice, this court will review its decision only for an abuse of discretion if either party elects to file an appeal. In other words, we express no opinion at this juncture as to whether appellee is entitled to an award of prejudgment interest.
The trial court's judgment with respect to the award of prejudgment interest must be reversed, and the matter must be remanded for that court to engage in the mandatory good faith analysis required by the statute. Therefore, appellant's first assignment has merit to the limited extent indicated. In addition, appellee's assignment on cross appeal is also meritorious for the reasons previously stated.
In her second assignment of error, appellant proposes that the trial court erred in awarding prejudgment interest and the costs of appellee's subsequent R.C. 3929.06 supplemental complaint because the court's July 14, 1998 order entering judgment on the arbitration award was not in conformance with R.C. 4123.931. This latter statute provides in relevant part:
 "(A) The payment of compensation or benefits pursuant to this chapter or Chapter 4121., 4127., or 4131., of the Revised Code creates a right of subrogation in favor of a statutory subrogee against a third party. A statutory subrogee's subrogation interest includes past payments of compensation and medical benefits and estimated future values of compensation and medical benefits arising out of an injury to or disability or disease of a claimant.
 "(B) A claimant shall notify a statutory subrogee of the identity of all third parties against whom the claimant has or may have a right of recovery. No settlement, compromise, judgment, award, or other recovery in any action or claim by a claimant shall be final unless the claimant provides the statutory subrogee with prior notice and a reasonable opportunity to assert its subrogation rights. If a statutory subrogee is not given that notice, the third party and the claimant shall be jointly and severally liable to pay the statutory subrogee the full amount of the subrogation interest."
In the case at bar, appellee had apparently filed a claim for workers' compensation benefits based on the fact that he was operating the truck within the scope of his employment duties at the time of the accident. Appellant is now suggesting that the trial court's January 13, 1998 entry awarding prejudgment interest to appellee and the October 20, 1998 order dismissing the supplemental complaint and assessing the costs thereof to appellant are invalid because they were predicated upon the July 14, 1998 order entering judgment on the arbitration award. According to appellant, the latter order is allegedly invalid under R.C. 4123.931 because appellee (i.e., the claimant) did not provide a statutory subrogee (i.e., the administrator of the Bureau of Workers' Compensation) with prior notice and a reasonable opportunity to assert its subrogation rights.
Appellant's position is unfounded. Even if we assumearguendo that appellee had a statutory duty to notify the Bureau of Workers' Compensation of his intent to file a civil action against appellant to recover compensation for medical benefits, this does not mean that the resulting July 14, 1998 decree entering the $30,000 judgment based on the arbitration award was automatically invalid. R.C. 4123.931(B) explicitly provides that "[i]f a statutory subrogee is not given that notice, the third party and the claimant shall be jointly and severally liable to pay the statutory subrogee the full amount of the subrogation interest." Thus, the Bureau of Workers' Compensation would have an adequate legal remedy available to it in the form of a lawsuit by which to assert its subrogation rights. Appellant's second assignment is not well-taken.
Based on the foregoing analysis, appellant's first assignment of error is meritorious, while her second assigned error lacks merit. Appellee's assignment of error on cross appeal is well-taken. Accordingly, the judgment of the trial court is reversed, and the matter is remanded for further proceedings consistent with this opinion.
 ______________________________________________________ JUDITH A. CHRISTLEY, JUDGE
FORD, P.J., O'NEILL, J., concur.
[1] Although the original complaint filed in this matter designated appellant's surname to be "Rdoht," a review of the record demonstrates that her name is actually spelled "Roht." Hence, we employ the correct spelling in this opinion.
[2] Although both parties are appealing the trial court's judgment, we will refer to Roht and Cek as appellant and appellee, respectively, for the sake of simplicity.
[3] Appellee's complaint actually named "O.L. Peterson Trust" as a defendant. Again, it is apparent from the record that the correct spelling is "D.L. Peterson Trust."
[4] Although the first assignment of error ostensibly challenges the trial court's decision with respect to prejudgment interest, postjudgment interest, and court costs, appellant really only takes issue with the award of prejudgment interest. As a result, we will limit our analysis of this proposed error accordingly.
[5] R.C. 1343.03 has since been amended by H.B. 350 effective January 27, 1997. According to § 6(A) of H.B. 350, however, the amendments to R.C. 1343.03 apply only to civil actions that are commenced on or after the effective date of the act. Therefore, since appellee instituted his civil action against appellant prior to January 27, 1997, the prior version of the statute governs.
[6] Although the statute does not expressly set forth a time limit, the Supreme Court of Ohio has held that an R.C.1343.03(C) motion for prejudgment interest "must be made to the trial court following the verdict or decision in the case and in no event later than fourteen days beyond the entry of judgment."Cotterman v. Cleveland Elec. Illuminating Co. (1987), 34 Ohio St.3d 48, paragraph one of the syllabus.
[7] It should be noted that the amended version of R.C.1343.03(C) provides that prejudgment interest "shall be computed from the date the plaintiff gave the defendant written notice in person or by certified mail that the cause of action accrued * * * or from the date the plaintiff filed a complaint to commence the civil action until the date that the judgment, decree, or order for the payment of the money is rendered, whichever time period is longer[.]" Under the current statute, therefore, prejudgment interest does not begin to run on the actual date that the cause of action accrued, but rather on the date when the plaintiff either gives the defendant written notice that the cause of action accrued or files a complaint to commence a civil action.