OPINION
Radiology Physicians, Inc. ("Radiology Physicians") appeals from a judgment entered upon a jury verdict in the Montgomery County Court of Common Pleas, which awarded $750,000 to Tara Lynn Smith and $200,000 each to her husband and two sons related to her medical malpractice claim. Radiology Physicians also appeals from an award of prejudgment interest.
In early 1995, Smith felt a lump in her right breast and went to see her gynecologist about it. Although the gynecologist was unable to feel the lump himself, he ordered a mammogram in March 1995. Dr. Josef Wenker of Radiology Physicians interpreted the mammogram and compared it to a mammogram of Smith from the prior year, concluding that the mammogram was normal and showed no signs of malignancy. Wenker recommended that Smith have another mammogram in one to two years. Smith sought further evaluation of the lump in her breast in November 1995, whereupon a malignant tumor was discovered. She later filed a malpractice claim against Radiology Physicians for Wenker's failure to diagnose her cancer in March 1995.
In addition to these undisputed facts, Smith presented the following evidence. According to Smith's experts, the tumor was about two centimeters in diameter in March 1995 and should have been apparent to Wenker when he looked at the mammogram. Smith's experts opined that the cancer probably had been in stage one or early stage two at that time and probably had not spread to her lymph nodes or had spread to only one or two. By November, the cancer was in stage three, and ten lymph nodes under Smith's arm were involved. The chances of recovery from a stage three cancer are much smaller than from a stage one cancer, and the chance of recurrence is much greater. Also, the larger size of the cancer in November and its more advanced stage necessitated a radical mastectomy and the most aggressive form of chemotherapy treatment, whereas a lumpectomy and a less toxic form of chemotherapy would probably have been sufficient if the tumor had been diagnosed in March 1995.
Oncologists and cardiologists testified that cardiomyopathy, or weakness in the heart muscle, is a recognized risk of the aggressive form of chemotherapy that Smith had received. Smith realized that she had been afflicted with this condition in September 1996, when she was admitted to the hospital with congestive heart failure. Although medications improved her heart condition somewhat, experts testified that she would never be able to return to her normal activities or to work because of the weakness of her heart, which was irreversible. They also testified that she would need to take medication for this heart condition for the rest of her life. Smith was free of cancer at the time of trial, but her experts testified that she had a very high likelihood of recurrence.
Radiology Physicians presented expert testimony that Smith's lymph nodes had probably already been involved in her cancer in March 1995 and that Smith would have received the same treatment if she had been diagnosed in March as she received in November. Experts also pointed out that some of the classic signs of malignancy on a mammogram had been absent from Smith's March 1995 films. Defense experts testified that technology might not have permitted a better diagnosis in March 1995 and that there would have been no statistical difference in Smith's odds of recurrence if the cancer had been discovered in March rather than in November. Radiology Physicians also presented expert testimony that Smith had only a ten percent chance of dying of cancer in next 20 years. Finally, the defense presented expert testimony that Smith had suffered from a preexisting heart condition, that the aggressive chemotherapy that she had been given had aggravated that condition but had not created it, and that there had been no lasting adverse effects on Smith's heart as a result of her chemotherapy.
As discussed supra, the jury returned a verdict in favor of Smith, her husband, and her children. In an interrogatory, the jury expressly found that Wenker had "fail[ed] to use `standard of care' in the reading of March 1995 mammogram and fail[ed] to recommend further evaluations of the area in question." The trial court overruled Radiology Physicians' motions for a judgment notwithstanding the verdict and for a new trial. In Case No. 18802, Radiology Physicians appeals from the judgment rendered upon the jury's verdict, raising two assignments of error.
After the trial, Smith filed a motion for prejudgment interest on the basis that Radiology Physicians had not entered into good faith settlement negotiations prior to trial. After conducting a hearing on the matter, the trial court granted the motion for prejudgment interest. In Case No. 19088, Radiology Physicians appeals from this judgment.
We will address these appeals together in this opinion, beginning with the issues raised in Case No. 18802.
"I. THE TRIAL COURT ERRED WHEN IT OVERRULED THE APPELLANT'S MOTION FOR DIRECTED VERDICT, AND APPELLANT'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR, IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL."
Radiology Physicians claims that the trial court should have directed a verdict in its favor or granted it a new trial because Smith had been "cured" of cancer at the time of trial and because the possibility of recurrence was speculative. Radiology Physicians contends that "no actual injury had, in fact, materialized" and that Smith had suffered "no loss proportionate to the jury's verdict." This argument presumes that the jury compensated Smith as if she were certain to die when, in fact, she is "cured" and may never have a recurrence. Radiology Physicians also objects to allowing the jury to rely on statistics in determining Smith's likelihood of recurrence, when Smith was not part of the studies from which the statistics were developed.
As a preliminary matter, we note that Radiology Physicians conceded at trial that there was sufficient evidence of damages related to the cardiomyopathy to go to the jury and argued only that it should have been granted a directed verdict on the issue of future damages from cancer because Smith had been "cured" of that condition. The trial court concluded that there was sufficient evidence of damages from cancer to submit the matter to the jury. We note that Radiology Physicians did not request jury interrogatories that would have differentiated between damages related to Smith's heart condition and damages related to cancer. Thus, we do not know whether the jury awarded any damages based on the risk of a recurrence of cancer and do not know whether Radiology Physicians was harmed by the alleged error.
In our view, however, the trial court did not err in concluding that there was sufficient evidence to submit the issue of damages from cancer to the jury. Aside from the issue of future damages, Smith had already suffered significant damages related to the treatment of her cancer at the time of trial, and there was evidence from which the jury could have concluded that these damages were caused by the delay in her diagnosis. Smith presented evidence that she had been required to endure a more toxic chemotherapy treatment than would have been necessary if she had been diagnosed at the time of her March 1995 mammogram and that she had been required to have a mastectomy rather than a lumpectomy because of this delay. These damages were properly submitted to the jury along with damages from the cardiomyopathy, which Smith associated with the chemotherapy drugs.
The first assignment of error is overruled.
"II. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT WHEN IT ADMITTED, OVER APPELLANT'S OBJECTION, INADMISSIBLE, SPECULATIVE HEARSAY EXPERT TESTIMONY."
Radiology Physicians argues that Smith elicited hearsay testimony from her expert witnesses in the form of statistical data from studies upon which they relied.
A description of the evidence at issue will be helpful to our discussion of this assignment of error. Radiology Physicians objects to the testimony of Drs. William Reed and Barry Singer. Dr. Reed testified about his involvement in the National Surgical Adjuvant Breast and Bowel Project ("NSABP") as a "principal investigator" and member of the breast committee. The NSABP conducts clinical trials about the effectiveness of various treatments on breast cancer. When questioned about the basis for his opinion that it was unlikely that Smith's breast cancer had spread to her lymph nodes at the time of her March 1995 mammogram, Reed testified that NSABP studies "involve many, many hundreds of women who are entered into the study and undergo a surgical removal of axillary lymph nodes and a recording of the size of the primary tumor. And we know on the basis of that, the tumors that are under two centimeters spread to the lymph nodes only in 20 to 30 percent of cases." Reed further testified as follows:
 "Q: Do you have an opinion, doctor, based on the same things I asked you before your education, training and experience, your work with the clinical trials, your work with the [NSABP] and the survival statistics that have come out of those clinical trials do you have an opinion which you can express as a matter of reasonable medical probability as to whether or not Tara will have a recurrence of her cancer as of today?
"A: Yes.
"Q: And what is your opinion?
 "A: My opinion is that she will probably recur at some point."
Radiology Physicians claims that Reed's references to NSABP research studies violated Stinson v. England, 69 Ohio St.3d 451, 1994-Ohio-35;Courtney v. Taylor (1998), 125 Ohio App.3d 487, and Beavercreek LocalSchools v. Basic, Inc. (March 6, 1991), Greene App. No. 89 CA 88. We disagree. Stinson and Courtney involved efforts to impeach expert witnesses through the use of treatises wherein the content of the treatises was used as substantive evidence. In Beavercreek, an expert was asked to state the collective conclusions of members of a symposium in which he had participated; he did not merely use the symposium's conclusions as a basis for his own opinion. Id. at 678. These situations are different from the one presented here. Reed had clearly relied on the NSABP studies in forming his own opinions, but he had also been actively involved in those studies and did not offer the results of those studies as substantive evidence independent of his opinion.
Reed's testimony was more akin to the expert testimony offered inWightman v. Consolidated Rail Corp., 86 Ohio St.3d 431, 1999-Ohio-119, wherein the expert testified about "broad patterns" that had been observed in collisions at railroad crossings. In Wightman, the supreme court held that "[t]here are certain things that an expert, by reason of his expertise, knows. * * * When providing background information, and not opining as to causation, we cannot expect an expert to footnote every statement with a recitation of his direct observation of the phenomenon, or a bibliography explaining how he knows his statement to be true. * * * A distinction can be made between background information and an opinion about causation. * * * When testifying as to broad patterns rather than specific opinions, the same level of foundation is not required." Id. at 437-438. See, also, State v. Jenkins (July 19, 2002) Miami App. No. 2000-CA-59 (holding that expert testimony that physical evidence of child sexual abuse was present in only 15 percent of cases assisted the jury in determining whether abuse had occurred and did not run afoul of Evid.R. 703). In our view, Reed's testimony about the likelihood that Smith's cancer had spread to her lymph nodes in March 1995, which incorporated his involvement with the NSABP studies and the data gathered from those studies, did not violate Evid.R. 703 by incorporating hearsay testimony.
Radiology Physicians also objects to Dr. Singer's testimony that, in his opinion, Smith's chance of recurrence was 70 percent, that Smith would have had an 85 percent chance of survival if diagnosed in March 1995, and that Smith would eventually succumb to her cancer. Radiology Physicians objected to this testimony on the grounds that the statistics were "based on studies of human beings and trials that did not include Tara Smith. He has no specific information * * * that differentiates out this person from the 70 percent to the 30 percent." Radiology Physicians also characterizes these statistics as "speculative and irrelevant." We disagree. Singer stated that his opinion was based on statistics on breast cancer survival that had been accumulated over 30 or 40 years by groups such as the American Society of Clinical Oncology and the American Cancer Society. Singer's general reliance on such statistics was the type of background information permitted in Wightman. It is proper for a medical expert to rely on such information in his practice and in forming opinions.
The second assignment of error is overruled.
In Case No. 19088, Radiology Physicians contests the trial court's findings that it did not fully cooperate in discovery and that it did not rationally evaluate its potential liability, which led to an award of prejudgment interest.
In order to receive an award of prejudgment interest, the movant must show that: 1) a timely motion for prejudgment interest was filed; 2) the court held a hearing on the motion; 3) the party to whom the judgment is to be paid did not fail to make a good faith effort to settle the case; and 4) the party required to pay the judgment failed to make a good faith effort to settle the case. Moskovitz v. Mt. Sinai Med. Ctr. (1994),69 Ohio St.3d 638, 658; R.C. 1343.03(C). The trial court found that the first three prongs of this test had been satisfied and that the crucial determination involved the fourth prong: whether Radiology Physicians had made a good faith effort to settle the case. We agree with this assessment.
A party has not "failed to make a good faith effort to settle" under R.C. 1343.03(C) if he has fully cooperated in discovery proceedings, has rationally evaluated his risks and potential liability, has not attempted to unnecessarily delay any of the proceedings, and has made a good faith monetary settlement offer or has responded in good faith to an offer from the other party. Kalain v. Smith (1986), 25 Ohio St.3d 157, 159. If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer. Id. The decision as to whether a party's settlement efforts indicate good faith is generally within the sound discretion of the trial court. Id., citingHuffman v. Hair Surgeon, Inc. (1985), 19 Ohio St.3d 83.
At the hearing on prejudgment interest, the defense attorney, Michael Lyon, testified that he believed Smith to be disease-free and steadfastly maintained that she had suffered no damages. He stated that he believed that any delay in Smith's diagnosis had not affected her treatment regimen and that her lymph nodes had already been involved in March 1995. He also stated his belief that Smith had had a preexisting cardiac condition and that this condition had not been exacerbated by chemotherapy. Lyon repeatedly stated that he had seen "almost zero" risk of a verdict in Smith's favor. An official from Radiology Physician's insurance carrier stated that he had never sought Wenker's consent to a settlement in Smith's case, as required by the insurance contract, but he also stated that he had never failed to obtain a doctor's consent to settle a case when he believed the case should be settled.
Smith's attorney testified that she had made a demand for $825,000 before trial, but that defense counsel had rejected the offer, stating only that Wenker was unwilling to settle. She stated that every effort she had made to bring up settlement negotiations had led to this response and that she had never been told that the defense thought that the case had no merit.
The trial court concluded that, in evaluating the pretrial discovery, Radiology Physicians had failed to make an objectively reasonable assessment of its potential liability in deciding not to discuss a settlement. It cited the following factors in reaching this conclusion. The only defense expert other than Wenker to express an opinion about the standard of care stated that, while she believed that Wenker had not breached the standard of care, she herself did see a subtle asymmetric density of the right breast on Smith's March 1995 mammogram. The trial court concluded that the deposition testimony of this expert, coupled with the deposition testimony of Smith's two experts who observed an abnormality on the March 1995 mammogram, evinced a risk that the jury would find that Wenker should have observed this condition as well, and that Radiology Physicians had not been objectively reasonable in assessing this risk at "almost zero." The trial court also found the defense's assessment that Smith had been "cured" meaning that she had no likelihood of recurrence to be "grossly unrealistic." Further, although the defense had been prepared to present expert testimony that Smith's cancer treatment would have been the same even if the cancer had been discovered in March 1995, the trial court noted that Smith had been armed with considerable evidence to the contrary. The trial court further concluded that there had been a risk that the jury would attribute Smith's heart condition and the suffering related thereto to a delay in diagnosis, even though the defense was prepared to present its own position that the cardiomyopathy had preexisted the cancer and had totally receded once chemotherapy treatment had stopped. Moreover, the court noted that, despite the insurance company representative's claim that he weighed heavily a physician's feeling "in his heart of hearts" as to whether he had met the standard of care in considering settlement options, the representative had not talked with Wenker or the directors of Radiology Physicians about this issue. Finally, the trial court concluded that Radiology Physicians had not fully complied with discovery in the case, but that this issue was not the most important issue in the case.
The trial court also concluded that, in lieu of making a good faith settlement offer, Radiology Physicians had failed to respond in good faith to the plaintiff's demand for a settlement. Although the defense claimed that it had believed that it had had no risk of being found liable, it never communicated this belief to Smith's attorneys. Rather, the only reason communicated by Radiology Physicians for rejecting Smith's settlement offers was Wenker's alleged unwillingness to settle. At the hearing, the defense attorney also dismissed Smith's experts as "marginal at best" without any explanation of why their testimony would not have created some risk of exposure to damages. The trial court concluded that "[r]eliance solely on an insured's right to preclude settlement by withholding his consent is not sufficient to constitute a good faith response."
The trial court's judgment was detailed and well-written, and it stated legitimate bases for awarding prejudgment interest in this case. We cannot conclude that the trial court abused its discretion in entering this award.
The assignment of error in Case No. 19088 is overruled.
The judgments of the trial court will be affirmed.
FAIN, J. and GRADY, J., concur.