DECISION.
{¶ 1} Plaintiff-appellant Anthony Emerson assigns error to the trial court's decision overruling his posttrial prejudgment-interest motion. Emerson had an automobile accident with defendant-appellee James Yurchak. Yurchak, now deceased, was insured by Progressive Insurance Company, so Progressive defended against the suit. A jury awarded Emerson $71,434, more than double Progressive's final settlement offer. Emerson contended that Progressive did not make a good-faith effort to settle, and he demanded prejudgment interest. The trial court denied the request, and we affirm.
 {¶ 2} On the morning of trial, Progressive offered $35,000 but Emerson demanded $45,000. The $10,000 disparity between Progressive's highest offer and Emerson's lowest demand proved to be irreconcilable, and the parties went to trial. After the jury award, Emerson moved for prejudgment interest, arguing that Progressive had failed to make a good-faith settlement offer.[1]
 {¶ 3} The evidence offered by both sides presented a close call. And because the trial court was in the best position to make that call, its judgment on the issue is subject to an abuse-of-discretion standard. We hold that the record fails to show that the trial court abused its discretion.
 {¶ 4} Emerson argued that Progressive had failed to reevaluate the claim after he had submitted new medical expenses and had proffered additional diagnoses. Progressive responded that Emerson's injuries were speculative, that causation was questionable, that the initial evaluation encompassed Emerson's additional diagnoses and expenses, and that the claim had been evaluated and reevaluated but that the reassessment had not merited an increase.
 {¶ 5} In February 2003, Progressive initially evaluated the claim and offered $18,277. About six months later, Emerson demanded $775,000 — purportedly based on additional medical expenses, continued treatment, neuropsychological treatment, and earnings losses.
 {¶ 6} In response, Progressive reevaluated the claim at $30,000 and offered $25,000. Of the $30,000, $6,268 had been allotted to medical expenses, $1,927 had been apportioned to past wage loss, and $21,805 had been attributed to past pain and suffering. But Progressive assigned no value to future medical care or to future pain and suffering.
 {¶ 7} Emerson presented additional medical bills to Progressive for approximately $1,758 and $3,792. But Progressive did not increase its offer. Emerson characterizes the lack of an increased offer as Progressive's failure to reevaluate the claim. But Progressive's witness testified below that it would not have reevaluated a claim unless the additional information drastically changed its position. Before trial, Emerson had submitted a total of over $12,000 in medical expenses, but Progressive did not budge.
 {¶ 8} Progressive finally reevaluated the case in preparation for mediation and increased its offer to $30,000. Emerson counteroffered at $60,000. No deal was made. Then immediately before trial, Progressive increased its offer to $35,000, and Emerson counteroffered at $45,000. But again, no deal was made. The case went to trial, and the jury awarded Emerson $71,434.
 {¶ 9} Emerson maintained that, despite the changed circumstances, Progressive was recalcitrant in reevaluating the claim, that the substantial changes warranted a new evaluation, and that because Progressive did not increase the offer, it had failed to make a good-faith effort to settle. In support, Emerson presented Progressive's attorney's notes taken from the deposition of Dr. John Kelly (Emerson's treating physician). At that deposition, Progressive's attorney noted that (1) the physician would be an excellent witness for Emerson; (2) the physician testified that Emerson's complaints were credible and consistent; (3) a jury likely would find the physician persuasive; (4) the physician would testify that the projected cost of Emerson's future medications would be about $42,000; (5) Emerson would need additional medical care at a cost of over $5,000 during his lifetime; and (6) Emerson suffered a 5% permanent impairment. But Progressive did not raise its offer.
 {¶ 10} Progressive, in supporting its reluctance to increase its offer, showed that (1) Emerson's neuropsychological test results indicated that there was no identifiable brain damage, and that his loss of memory was due to a somatoform disorder — a psychological disorder that was a manifestation of a head injury — for which counseling was recommended; (2) the notes from Emerson's deposition pointed out that the only accident-related symptoms were memory problems and ongoing headaches, and that Emerson would make a fairly poor witness because of his inability to eloquently express himself; (3) Progressive's doctor would testify that Emerson was capable of performing his current job and would have no loss of earnings due to the accident; (4) Progressive had twice increased its offer; (5) Dr. Kelly's deposition revealed that there could be a lack of causation between the car crash and Emerson's headaches; and (6) the insurer, in making its determination, considered and discussed the evaluations of all the doctors, the claims for future medical expenses and future loss of enjoyment of life had been included in the assessment, and based on the diagnosis and the treatment, the $30,000 evaluation remained accurate; and (7) an additional $5,000 was nonetheless authorized pretrial to avoid trial and to settle the claim.
 {¶ 11} Both arguments had merit. But a prejudgment-interest award is within the discretion of the trial court.[2] And the trial court's judgment will not be disturbed absent an abuse of that discretion.[3] This is one of the instances where that standard makes sense — the trial court had the case all along and was privy to some of the negotiations. We will not second-guess.
 {¶ 12} Progressive underestimated the jury award, but poor predictive ability does not necessarily establish a lack of good faith.[4] We are convinced that a cogent argument can be made that Progressive rationally evaluated its liability and simply got it wrong. Our review of the record fails to reveal any abuse of discretion by the trial court. Thus we affirm its judgment.
Judgment affirmed.
Hildebrandt, P.J., and Sundermann, J., concur.
[1] See R.C. 1343.03(C).
[2] See Moskovits v. Mt. Sinai Med. Ctr. (1994),69 Ohio St.3d 638, 659, 635 N.E.2d 331.
[3] See Kalain v. Smith (1986), 25 Ohio St.3d 157, 159,495 N.E.2d 572.
[4] See Doyle v. Fairfield Machine Co. (1997),120 Ohio App.3d 192, 697 N.E.2d 667.