JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant MetroHealth Medical Center appeals from the decision of the trial court granting the motion for prejudgment interest filed by the plaintiff-appellee Maria Galvez, Adminstratrix of the Estate of Guadalupe Martinez.
 {¶ 2} The trial court entered a detailed opinion resolving the appellee's motion for prejudgment interest. The court stated that it considered the materials submitted by counsel, arguments of counsel, the evidence produced at the prejudgment interest hearing, and the evidence presented during the underlying trial. The appellee initially filed a medical malpractice suit against appellant and its treating physician subsequent to the death of Guadalupe Martinez. Mrs. Martinez, who is survived by her infant daughter and her husband, died following an emergency caesarean section as a result of complications of preeclampsia. The jury found Dr. Eric Friess to have violated the applicable standard of care and returned a verdict for the appellee in the sum of $2,750,000.
 {¶ 3} It is important to note at the outset that MetroHealth was self insured in the amount of $1,000,000. The excess insurance carrier was Mutual Assurance Company. The evidence indicates that a final pretrial was held on December 6, 1999. The day prior to this pretrial, the appellant faxed the appellee a settlement offer of $150,000 in cash and a remaining structure funded with $103,000. At the pretrial the appellee made her initial settlement demand in the amount of $3,500,000. A second final pretrial was held on January 5, 2000, and the trial court indicated that a representative of the excess carrier should be present. Mr. Beech of Mutual Assurance was informed of the trial court's desire for his attendance at this meeting, but he chose not to attend.
 {¶ 4} On January 11, 2000, counsel for the appellee responded by letter and stated that he was authorized to settle the case for $1,750,000. He asked that this lowered amount be communicated to the excess insurance carrier. The letter also noted that issues were raised regarding the economic loss expert's evaluation. Counsel indicated that, "as a practical matter, I do not believe his numbers dramatically impact on the evaluation of the case."
 {¶ 5} A copy of a facsimile dated January 12, 2000, from appellant's counsel to the appellee's counsel acknowledges the reduction in demand. The appellant raised its offer to $400,000 plus the structured offer as set forth previously. The appellee responded on January 13, 2000, as follows:
 {¶ 6} I am in receipt of your fax of January 12, 2000, which I interpret as an offer of $500,000. The offer is rejected.
 {¶ 7} I believe that our previous demand of $1.75 million is very reasonable considering this tragic and completely preventable death of a very young 24 year old wife and mother. In order to resolve this case it is essential that your client, Metrohealth Medical Center, tender its retention of $1 million to permit us to begin negotiations with the excess carrier, Mutual Assurance Company.
 {¶ 8} Considering that the upside of what a jury may do with this tragedy is significantly greater than the downside, I think we're getting to the end of the line in terms of where we would recommend our clients go to resolve this case.
 {¶ 9} Be advised that I am authorized to resolve the case for $1.5 million. Please let me know if your client and the excess carrier are willing to resolve the case on that basis.
 {¶ 10} Finally, you mentioned at the pre-trial on January 5th that you may call a nurse to testify. I asked you to produce her for deposition if you intended to call her. Since I have not heard from you, and never received a trial brief or witness list, I will assume you will not be calling the nurse at trial.
 {¶ 11} The appellant failed to respond in any manner to this letter.
 {¶ 12} The in-house counsel for MetroHealth, Mary Lagerski, and outside counsel, Deidre Henry, both testified at the hearing on the motion for prejudgment interest. Ms. Lagerski stated that no hard copies of her e-mails were kept and that the e-mails themselves were deleted from the computer system. It was the opinion of Ms. Lagerski that counsel for the appellee had indicated he did not wish to speak to a representative of MetroHealth, but rather wanted to negotiate with the excess carrier. It also became clear that Ms. Lagerski had the authority to offer appellee $750,000, and could have obtained more if need be. These figures were never communicated to the appellee. Ms. Lagerski and Ms. Henry each testified that she believed the verdict range of this case was between $750,000 to $1,500,000. By contrast, a memo authored by Mr. Beech of Mutual Assurance Company noted that MetroHealth's counsel believed the settlement range was between $750,000 to $1,500,000. Ms. Lagerski testified that Mr. Beech erred. Beech never informed Ms. Lagerski or Ms. Henry that he had $500,000 in reserves to assist in settling this case. Ms. Lagerski testified that the claim was medically defensible.
 {¶ 13} Attorney Richard Berris, trial counsel for the appellee, testified that based upon the expert's report, the case was medically indefensible. He also testified that he never indicated to the appellant that his reduced demand of January 13, 2000, was a "line in the sand" below which he would not venture. Berris testified that he never refused to negotiate with anyone. He believed that his letter indicated that the figure of $1,500,000 was in fact negotiable, but that he never received word from any representative of the appellant. Mr. Berris testified that this case was tried to two mock juries and that both returned verdicts for the appellee. The first mock jury indicated that the verdict would be between $1,500,000 and $1,800,000. The second mock jury returned a unanimous $2,000,000.
 {¶ 14} Berris indicated during his testimony that the appellee's claim for economic damages was abandoned, but that this did not reduce the value of the case in any way because the economic damages were nominal in the overall picture.
 {¶ 15} The trial court concluded that MetroHealth failed to rationally evaluate all of their risks and potential liability and failed to make a good faith effort to settle. The court stated that this determination was based upon its familiarity with the proceedings in the underlying action, its involvement with the parties' settlement negotiations, and the assessment of the credibility of the witnesses during the prejudgement interest hearing. The court then granted the appellee's motion for prejudgment interest and calculated the amount due.
 {¶ 16} The appellant sets forth two assignments of error which require consideration of similar facts and law and thus will be considered together.
 {¶ 17} THE COURT ERRED IN FINDING THAT PLAINTIFF-APPELLEE DID NOT FAIL TO MAKE A GOOD FAITH EFFORT TO SETTLE THE CASE.
 {¶ 18} THE COURT ERRED IN FINDING THAT THE DEFENDANT-APPELLANT FAILED TO MAKE A GOOD FAITH EFFORT TO SETTLE THE CASE.
 {¶ 19} The appellant asserts that the trial court erred in making its findings as to the effort made by each party to settle. The appellant ultimately contends that the trial court should not have granted prejudgment interest to the appellee.
 {¶ 20} Prejudgment interest is authorized pursuant to R.C.1343.03 which states in pertinent part:
 {¶ 21} (C) Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid, if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case.
 {¶ 22} The seminal decision setting forth the guidelines for Ohio courts determining the question of prejudgment interest is Kalain v.Smith (1986), 25 Ohio St.3d 157, at the syllabus, where the court held:
 {¶ 23} A party has not "failed to make a good faith effort to settle" under R.C. 1343.03(C) if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer.
 {¶ 24} The Kalain court also noted that the statute requires all parties to make an honest effort to settle a case. A party may have "failed to make a good faith effort to settle" even when he has not acted in bad faith. The decision as to whether a party's settlement efforts indicate good faith is generally within the sound discretion of the trial court. Id. citing to Huffman v. Hair Surgeon, Inc. (1985),19 Ohio St.3d 83. The party seeking prejudgment interest bears the burden of demonstrating that the other party failed to make a good faith effort to settle the case. Moskovitz v. Mt. Sinai Med. Ctr. (1994),69 Ohio St.3d 638, 659, 635 N.E.2d 331.
 {¶ 25} Likewise this court has held that an allegation that the trial court abused its discretion in awarding prejudgment interest is tantamount to alleging that the trial court acted unreasonably, arbitrarily, or unconscionably. Algood v. Smith (April 20, 2000), Cuyahoga App. Nos. 76121, 76122. Such judgments, which rely so heavily on findings of fact, will not be disturbed on appeal as being unreasonable or arbitrary if supported by some competent, credible evidence. Id.
 {¶ 26} In determining whether these efforts were reasonable, the trial court is not limited to the evidence presented at the prejudgment interest hearing. The court may also review the evidence presented at trial, as well as its prior rulings and jury instructions, especially when considering such factors as the type of case, the injuries involved, applicable law, and the available defenses. Otherwise, "the hearing required under R.C. 1343.03(C) may amount to nothing less than a retrial of the entire case." Galmish v. Cicchini, 90 Ohio St.3d 22, 2000-Ohio-7, citing to Moskovitz, supra, at 661.
 {¶ 27} Finally, when considering a trial court's decision on a motion for prejudgment interest, this court's duty is to determine whether the trial court abused its discretion. Kalain, supra. If there is evidence in the record which supports the trial court's decision, it should be affirmed. Bisler v. Del Vecchio (July 1, 1999), Cuyahoga App. No. 74300.
 {¶ 28} In the first assignment of error, the appellant asserts that the appellee's final settlement demand was presented as non-negotiable; that he would have no further discussions with MetroHealth; that appellee's counsel failed to indicate that he would take any increased offer to his clients; that the economic damages claim was abandoned without a reduction in the demand and that the two mock juries returned verdicts for the appellee for less than $2,000,000.
 {¶ 29} In the case sub judice, the trial court weighed the evidence submitted by the parties, including the testimony of the witnesses. Mr. Berris testified that there was no line in the sand, that he was ready to negotiate with anyone at all times, that the abandonment of the economic damages did not significantly impact the value of this case, and that the verdicts of the mock juries supported his belief in the value of this case. Berris specifically testified that he would anticipate a larger verdict from a real jury in a courtroom than from a mock jury. Trial court was entitled to believe Mr. Berris and therefore had competent, credible evidence upon which to base its determination. This court finds no abuse of discretion in the trial court's finding that the appellee did not fail to make a good faith effort to settle this case.
 {¶ 30} In the second assignment of error the appellant argues that it had a good faith belief that the actions taken by the physician were defensible and thus were not required to make any offer of settlement. The appellant points to the testimony of Ms. Lagerski and Ms. Henry estimating the settlement range of this case to be between $750,000 and $1,500,000. The appellant contends that this range was similar to the verdicts returned by the mock juries. The appellant also notes that the amount of the final jury verdict is irrelevant when considering the issue of prejudgment interest.
 {¶ 31} Once more, this court must note that the trial court was in the best position to evaluate the evidence both at the underlying trial and at the motion hearing. Mr. Berris testified at the motion hearing that the appellant's actions were medically indefensible and that he believed a jury in a courtroom would return a larger verdict than a mock jury. The court also received evidence that Mr. Beech of the Mutual Assurance Company learned from counsel for MetroHealth that the settlement range of the case, not the verdict range in the case, was between $750,000 and $1,500,000. Despite the testimony from Lagerski and Henry, the trial court was entitled to disbelieve their testimony. The trial court had credible and competent evidence before it upon which to base its conclusion that the appellant failed to rationally evaluate this case and that it failed to make a good faith effort to settle.
 {¶ 32} The appellant's first and second assignments of error are overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant her costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
KENNETH A. ROCCO, P.J., and PATRICIA A. BLACKMON, J., CONCUR.