KALAIN, APPELLEE, v. SMITH, APPELLANT.

[Cite as Kalain v. Smith (1986), 25 Ohio St. 3d 157.]

(No. 85-1417—Decided July 30, 1986.)

*Howard L. Calhoun,* for appellee.

*Young & Alexander Co., L.P.A., Joseph B. Miller* and *Mark R. Chilson,* for appellant.

WRIGHT, J. This case concerns the construction and application of the "good faith effort to settle" standard in R.C. 1343.03(C). That statute provides:

"Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by the agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid, if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case."

The statute was enacted to promote settlement efforts, to prevent parties who have engaged in tortious conduct from frivolously delaying the ultimate resolution of cases, and to encourage good faith efforts to settle controversies outside a trial setting.

Appellant argues that the statutory language "failed to make a good faith effort" necessarily requires a finding of bad faith. We disagree. The statute requires all parties to make an honest effort to settle a case. A party may have "failed to make a good faith effort to settle" even when he has not acted in bad faith.[1] *Mills* v. *Dayton* (1985), 21 Ohio App. 3d 208, and *Dailey* v. *Nationwide Demolition Derby, Inc.* (1984), 18 Ohio App. 3d 39, approved; *Ware* v. *Richey* (1983), 14 Ohio App. 3d 3, disapproved.

A party has not "failed to make a good faith effort to settle" under R.C. 1343.03(C) if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer.

The decision as to whether a party's settlement efforts indicate good faith is generally within the sound discretion of the trial court. *Huffman* v. *Hair Surgeon, Inc.* (1985), 19 Ohio St. 3d 83. This court will not overturn a finding on this issue unless the trial court's actions indicate an abuse of discretion.

In the case at bar, both the trial and appellate courts focused primarily on appellant's failure to disclose the $2,500 settlement authorization. The facts of this case, along with the testimony of counsel at the hearing on the motion for prejudgment interest, indicate that appellant had a reasonable, good faith belief that he had no liability and therefore had no duty to make

---

[1] Bad faith has been defined as " '* * * a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another.' " *Hoskins* v. *Aetna Life Ins. Co.* (1983), 6 Ohio St. 3d 272, 276, quoting *Slater* v. *Motorists Mut. Ins. Co.* (1962), 174 Ohio St. 148 [21 O.O.2d 420], paragraph two of the syllabus.

a monetary settlement offer. Further, the record reflects that appellant cooperated fully in discovery and did not attempt to unnecessarily delay any of the proceedings. Thus, we find that the trial court abused its discretion when it awarded prejudgment interest to appellee.[2]

Because the standard for a "good faith effort to settle" does not require parties in all cases to make monetary settlement offers, R.C. 1343.03(C) does not infringe upon a party's right to a jury trial, as is alleged by appellant in this case.[3] Appellant's other arguments challenging the constitutionality of the statute were not raised in the trial court and therefore will not be ruled upon by this court. *State* v. *Awan* (1985), 22 Ohio St. 3d 120.

The judgment of the court of appeals is reversed.

*Judgment reversed.*

LOCHER, HOLMES and C. BROWN, JJ., concur.

CELEBREZZE, C.J., SWEENEY and DOUGLAS, JJ., dissent.

CELEBREZZE, C.J., dissenting. I acquiesce in three parts of the majority's four-part test of when a party has failed to make a good faith effort to settle under R.C. 1343.03(C). I do not agree with the fourth component. By including the statute's "good faith" language three times within its definition of "good faith" effort to settle, the majority has set forth a circular test which provides little guidance, frames an uncertain standard, and is little more than an exercise in tautology. The court would have provided more certainty to its holding by stating "* * * (4) made an affirmative effort to reasonably propose settlement consistent with the party's evaluation of litigation risks and potential liability." See *Cox* v. *Fisher Fazio Foods, Inc.* (1984), 13 Ohio App. 3d 336, 338, Markus, J., concurring.

I also dissent from the majority's conclusion that the trial judge's award of prejudgment interest constituted an abuse of discretion.

The clear legislative purpose behind the enactment of R.C. 1343.03(C) is to provide our trial courts with a means of encouraging settlements be-

---

[2] Because we reverse the entire award of prejudgment interest, it is unnecessary to again address the issue of retroactive application of R.C. 1343.03(C). See *Huffman* v. *Hair Surgeon, Inc.* (1985), 19 Ohio St. 3d 83, 87.

[3] The court of appeals misinterpreted appellant's argument when it determined that appellant had no right to a jury trial on the issue of prejudgment interest. Appellant alleges an infringement of her right to a jury trial on the issue of her potential tort liability, not on the prejudgment interest issue. Appellant argues that, if required to make a monetary settlement offer when she has a reasonable belief that she was not liable, her right to a jury trial on the liability issue would be infringed upon because she would be forced to attempt to settle rather than having a jury determine whether she was liable.

tween litigants. In the case of *Mills* v. *Dayton* (1985), 21 Ohio App. 3d 208, 209, the court of appeals poignantly observed the mischief which the General Assembly sought to remedy: "This is not a new cause of action for prejudgment interest * * *, but a means developed by the legislature to provide a procedural vehicle for the enforcement of the public policy which requires that lawsuits be settled at the first opportunity and imposes a civil sanction against a party who holds money to its own use against the lawful claim of the other party which claim is not seriously disputable. In other words, this statute removes some of the advantages of delay for a stakeholder such as an insurance company who continues to be able to use money which should be paid to another solely because of the deliberative process."

To achieve these results, Ohio's trial courts are armed with discretionary authority to penalize a litigant who does not evince a "good faith effort to settle the case" when the prevailing adversary has made the effort.

The award of prejudgment interest is within the sound discretion of the trial court. *Cincinnati Ins. Co.* v. *First Natl. Bank* (1980), 63 Ohio St. 2d 220, 226 [17 O.O.3d 136]; *Huffman* v. *Hair Surgeon, Inc.* (1985), 19 Ohio St. 3d 83, 87. In this regard, we have consistently held that "[t]he term 'abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State* v. *Adams* (1980), 62 Ohio St. 2d 151, 157 [16 O.O.3d 169]. Most recently, we considered what constitutes an abuse of discretion in the award of prejudgment interest under R.C. 1343.03(C) in *Huffman* v. *Hair Surgeon, Inc., supra.* In *Huffman* at 87 we reiterated our view that " ' "[A]n abuse of discretion involves far more than a difference in * * * opinion * * *. The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an 'abuse' in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." ' "

Likewise, it is against our established practice to weigh evidence on appeal. *G.S.T.* v. *Avon Lake* (1976), 48 Ohio St. 2d 63, 65, fn. 2 [2 O.O.3d 217]. This is because we have steadfastly recognized that it is the mind of the trial judge as fact-finder, and not the minds of the judges of this court, that is to be convinced. Cf. *State* v. *Petro* (1947), 148 Ohio St. 473, 501-502 [36 O.O. 152]. The trial judge, as the trier of facts, is in a unique position to weigh the probative value of the evidence and assess the character and veracity of the witnesses' respective testimony:

"Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of

testimonial value. Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false. See *Rice* v. *City of Cleveland,* 144 Ohio St., 299 [29 O.O. 447], 58 N.E. (2d), 768.

"As in most cases, the evidence is in conflict in this case. The trial judge, having heard the witnesses testify, was in a far better position to evaluate their testimony then [*sic*] a reviewing court. There is substantial evidence in the record upon which he could base his findings of fact. Such evidence, if he believed certain witnesses, was sufficient to produce in his mind a firm belief or conviction as to the plaintiffs' allegations. Under such circumstances, a reviewing court may not as a matter of law substitute its judgment as to what facts are shown by the evidence for that of the trial court." *Cross* v. *Ledford* (1954), 161 Ohio St. 469, 478 [53 O.O. 361].

It is for these reasons we staunchly hold that "* * * the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State* v. *DeHass* (1967), 10 Ohio St. 2d 230 [39 O.O.2d 366], paragraph one of the syllabus; *State* v. *Ferrette* (1985), 18 Ohio St. 3d 106, 110.

Prior to trial, appellee's counsel, Howard L. Calhoun, attempted to negotiate with defense counsel. Calhoun testified that he initiated the negotiations by first advising opposing counsel that an independent witness to the accident would substantiate appellant's liability. Thereafter, Calhoun offered to settle appellee's $100,000 damage suit for $70,000. Prior to trial, Calhoun again advised appellant that appellee was willing to enter into a settlement dialogue and, in fact, made an offer of $65,000. During trial, Calhoun approached appellant's counsel on two more occasions to renew their settlement discussions and offered to settle for $60,000. Throughout these efforts defense counsel represented that his client was not willing to pay "one single dime" and that he had no authority to settle the case. However, testimony reveals that the insurer's claims superintendent, who was in charge of this claim, authorized defense counsel before pretrial to extend a settlement offer of $2,500. Counsel for appellant asserts that this limited authorization to settle was predicated upon "substantial movement" by appellee in her settlement demands. Based upon this purported limitation, defense counsel chose to never communicate any offer to appellee's counsel.

The trial court overruled two motions *in limine* by appellant which sought to prohibit inquiry into appellant's use of a side-view mirror and disclosure of the fact that she had paid a traffic ticket which she received in connection with the traffic accident. Upon completion of the trial, the jury returned a verdict for appellee in the amount of $75,000. Appellant paid the judgment in full and did not appeal the decision.

In my opinion, appellee's several unilateral offers to settle the case for sixty percent of the damages alleged constitutes "substantial movement," considering the fact that defense counsel would not even discuss a com-

promise.[4] As the trial judge succinctly stated at the hearing, "[t]hat's substantial in my estimation."

If this court had heard the cause *de novo,* the majority may have been justified in concluding, from the evidence in the record, that the judgment below should be reversed in favor of appellant. However, our constitutional mandate is not to try this cause, but rather to review the judgment below as an appeal. *Ledford, supra,* at 478. Based on the sterile record before us, I can not conclude, as the majority does, that appellant "rationally evaluated his [or her] risks and potential liability." In fact, if pressed to make an assessment concerning the reasonableness of the parties' conduct, appellee's offers and efforts to resolve the dispute are sustainable as being in good faith, but the actions of appellant are not.[5]

In light of the purpose behind the prejudgment interest statute and this court's settled aversion to substituting its collective judgment for that of a fact-finder, I reject the majority's conclusion that the judge below abused his discretion. The record is replete with evidence that the trial decision was based on fact and logic, not caprice or whim, that the judge exercised reason, not passion, and that the honest judgment rendered represents an appropriate exercise of discretionary power, not the perverted abuse of power. *State, ex rel. Shafer,* v. *Ohio Turnpike Comm.* (1953), 159 Ohio St. 581, 590-591 [50 O.O. 465]. In short, there is ample evidence in this instance which supports the decision of the trial court. "The fact that we, or any other court, may have reached a different conclusion does not establish abuse of discretion by the trial court." *Cox, supra,* at 337. I repudiate the majority's conclusions to the contrary.

I would, however, remand the cause to the trial court with directions that the prejudgment interest award be limited to an amount consistent with our decision in *Huffman, supra, i.e.,* calculation of interest to begin as of July 5, 1982, the effective date of R.C. 1343.03(C).

Based on the foregoing, I dissent.

SWEENEY, J., concurs in the foregoing dissenting opinion.

---

[4] The trial judge offered the following comments concerning appellant's contention that settlement discussions were not made because the plaintiff had not shown substantial settlement movement:

"If you offer him nothing, do you say you offered him nothing because he never moved off his position. If I was him, I'd never move off my position if you're not going to offer me anything. Why would he? You apparently don't want to negotiate, and that situation would be my interpretation of it.

"* * *

"* * * It's like an auction sale. You don't bid against yourself."

[5] At the hearing on the motion for prejudgment interest, the court also remarked: "* * * I've settled quite a few law suits, and I've never seen one settled yet that didn't have to start from two figures, a high and a low, and it's usually worth somewhere in between the two figures, but you never can settle anything if you don't have two figures to start from. * * *"

DOUGLAS, J., dissenting. Since I agree, for the most part, with the well-reasoned opinion of Judge Brogan and the Second District Court of Appeals, which opinion affirmed the judgment of the trial court, I respectfully dissent. It is my judgment that the court of appeals was correct when it found that a failure to make a good faith effort to settle does not require a showing of bad faith. A party has made a "good faith effort to settle" when that party has exerted an honest, purposeful effort, free of malice and/or the design to defraud and has not sought an unfair or unconscionable advantage over the opposing party. While the tests set up by the majority, in the syllabus herein, seem to encompass the foregoing criteria, the broad strokes of the majority will, in my judgment, lead to much speculation and consequent litigation to determine in every case whether a good faith effort to settle was made or whether the party not making such an effort did so because he had an objective reasonable belief that he had no liability.

Further, whichever test is used in this case, I would find that appellant did not make a good faith effort to settle and thus is subject to the prejudgment interest provisions of R.C. 1343.03(C). Thus, on this issue, the judgment of the trial court and that of the court of appeals should be affirmed.

On the issue of the awarding of prejudgment interest for any period of time before the effective date of R.C. 1343.03(C), to wit: July 5, 1982, this question was settled by this court in *Huffman* v. *Hair Surgeon, Inc.* (1985), 19 Ohio St. 3d 83, 87, where we said, with reference to R.C. 1343.03(C) that "* * * the court of appeals correctly determined that interest could not be awarded for the period prior to the effective date of the statute."

Accordingly, I would remand this cause to the trial court for the sole purpose of making the award of prejudgment interest effective July 5, 1982.