OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments to this court. Plaintiff-Appellant, Allied Erecting and Dismantling Company, Inc., appeals the decision of the Mahoning County Court of Common Pleas which denied its motion for prejudgment interest. The issues before this court are whether the trial court used an incorrect "bad faith" standard and whether it abused its discretion when ruling on the motion for prejudgment interest.
 {¶ 2} A trial court must award prejudgment interest if the party required to pay a money judgment failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case. The lack of a good faith effort is different than bad faith. But a trial court's reference to bad faith in its judgment entry is harmless if the record demonstrates that the trial court went through the proper analysis. In this case, the trial court properly considered the factors demonstrating whether a party fails to make a good faith effort to settle the case. The trial court's reference to bad faith can be ignored.
 {¶ 3} When ruling on a motion for prejudgment interest a trial court must determine if the party who must pay a money judgment made a good faith effort to settle the case. The Ohio Supreme Court has stated that a party has not failed to make a good faith effort to settle if it has (1) fully cooperated in discovery proceedings; (2) rationally evaluated his risks and potential liability; (3) not attempted to unnecessarily delay any of the proceedings; and, (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. In this case, the evidence supports the trial court's conclusion on the first, second, and fourth factor. And although the trial court did not specifically address the third factor, it would have abused its discretion if it had concluded that the City attempted to unnecessarily delay the proceedings. For these reasons, the trial court's decision is affirmed.
 Facts {¶ 4} This is the second time that the underlying case has come before this panel for appellate review. The dispute arose over who owned the slag and ballast underneath railroad tracks along a rail corridor that the Pittsburgh Lake Erie Railroad Company was selling to the City. PLE sold "all rail, other track material, salvageable ballast and ties (whether attached to track or not)" along the corridor to Allied. It sold the land itself to the City. But the contracts between PLE and the City only stated that Allied was entitled to "all rail track materials and ties and other track materials".
 {¶ 5} When Allied began removing the slag underneath the rail line, the City objected. It notified Allied that "the slag and ballast located on the property belongs [sic] to the City of Youngstown and is not to be removed by your company" and if Allied attempted to remove the slag, "the City will consider filing criminal charges for the unauthorized taking of City property." As a result of the City's actions, Allied filed a complaint which specifically stated two counts: declaratory judgment and breach of contract. During the course of litigation, the City sold the slag to a third-party who removed it.
 {¶ 6} The matter proceeded to a jury trial. After the evidence was presented, the trial court granted a directed verdict against Allied on its declaratory judgment and breach of contract claims. But it agreed to instruct the jury on tortious interference with a contract and conversion, finding that the complaint set forth the elements of those torts. The jury returned a verdict in Allied's favor for two million dollars.
 {¶ 7} After the jury's verdict, Allied filed a motion for prejudgment interest and the City filed a motion for judgment notwithstanding the verdict or, in the alternative, a new trial. The trial court granted the City's motion. Allied appealed this decision and, in a case styled Allied Erecting DismantlingCo., Inc. v. Youngstown, 151 Ohio App.3d 16, 2002-Ohio-5179, this court reversed the trial court's decision and reinstated the jury's verdict. Subsequently, we denied the City's timely application for reconsideration of our opinion, Allied Erecting Dismantling Co., Inc. v. Youngstown, 7th Dist. No. 00CA225, 2003-Ohio-0330, and the Ohio Supreme Court refused to accept the case for review. 02/20/2003 Case Announcements, 2003-Ohio-0734.
 {¶ 8} After this court issued its opinion, the parties submitted briefs regarding the motion for prejudgment interest with attached evidentiary material to the trial court and it held a hearing on the motion. After the hearing, the trial court denied Allied's motion for prejudgment interest.
 Prejudgment Interest {¶ 9} Allied's sole assignment of error argues:
 {¶ 10} "The trial court's denial of Allied's motion for prejudgment interest constituted reversible error."
 {¶ 11} Allied contends the trial court abused its discretion when it refused to award prejudgment interest because the evidence demonstrates that the City did not fully cooperate in discovery, that it unnecessarily delayed the proceedings, that it did not rationally evaluate its risks and potential liability, and that it failed to make good faith efforts to settle the case. It further contends that the trial court erred because it decided whether the City had acted in bad faith rather than whether its actions demonstrated merely a lack of a good faith effort to settle.
 {¶ 12} R.C. 1343.03(C) provides that a trial court shall award interest on a civil action based on tortious conduct from the date the cause of action accrued to the date on which the money is paid if the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case. This prejudgment interest may only be awarded upon motion by any party to the action and after a hearing. Id. The purpose of this statute "is to encourage litigants to make a good faith effort to settle their case, thereby conserving legal resources and promoting judicial economy." Peyko v. Frederick (1986), 25 Ohio St.3d 164, 167. It also prevents "parties who have engaged in tortious conduct from frivolously delaying the ultimate resolution of cases." Kalainv. Smith (1986), 25 Ohio St.3d 157,159.
 {¶ 13} The Ohio Supreme Court has explained that this statute has four components. "First, a party seeking interest must petition the court. * * * Second, the trial court must hold a hearing on the motion. Third, to award prejudgment interest, the court must find that the party required to pay the judgment failed to make a good faith effort to settle and, fourth, the court must find that the party to whom the judgment is to be paid did not fail to make a good faith effort to settle the case."Moskovitz v. Mt. Sinai Med. Ctr. (1994), 69 Ohio St.3d 638,658.
 {¶ 14} The party who seeks prejudgment interest bears the burden of proving that he is entitled to prejudgment interest. Id. at 659. If that party proves the four requirements of the statute, the trial court has no discretion and must award prejudgment interest. Id. at 658. But the trial court's ultimate judgment is reviewed for an abuse of discretion since it must decide if a party has made a "good faith effort" or, conversely, when has a party "failed to make a good faith effort to settle". Id. The phrase "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Huffman v. HairSurgeon, Inc. (1985), 19 Ohio St.3d 83, 87.
 {¶ 15} The Ohio Supreme Court has recognized that R.C.1343.03(C) requires that parties act in good faith. Moskovitz
at 658. Accordingly, it has established a four-part test to determine whether a party has failed to make a good faith effort to settle. "A party has not `failed to make a good faith effort to settle' under R.C. 1343.03(C) if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party." Kalain at syllabus.
 {¶ 16} The Ohio Supreme Court has added that a party need not make a monetary settlement offer if he has a good faith, objectively reasonable belief that he has no liability. Id. And a defendant can have a good faith, objectively reasonable belief that he has no liability even if there is some evidence that it may be liable. Patton v. Cleveland (1994), 95 Ohio App.3d 21,27. But this exception must be strictly construed so as to carry out the purposes of the statute. Moskovitz at 659. Furthermore, the "[e]xistence of a good faith, objectively reasonable belief of nonliability does not excuse a defendant from the remainingKalain obligations to (1) fully cooperate with discovery, (2) rationally evaluate risks and potential liability, and (3) refrain from unnecessary delaying maneuvers." Galayda v. LakeHosp. Sys., Inc. (1994), 71 Ohio St.3d 421, 429.
 {¶ 17} Finally, when discussing the statute's requirement that parties make good faith attempts to settle their claims, the Ohio Supreme Court has distinguished between lack of a good faith effort and bad faith. "[I]n prejudgment interest determinations pursuant to R.C. 1343.03(C), the phrase `failed to make a good faith effort to settle' does not mean the same as `bad faith.'"Moskovitz, 69 Ohio St.3d 638 at paragraph two of the syllabus. "[A] party may have failed to make a good faith effort to settle even though he or she did not act in bad faith." Id. at 659.
 {¶ 18} This distinction is important. "[T]he application of a `bad faith' definition in the determination of a motion for prejudgment interest implies that R.C. 1343.03(C) is punitive in nature. The Ohio Supreme Court espouses an opposite view. That court holds that in making its decision, a trial court must recognize that R.C. 1343.03(C) is not punitive in nature. * * * Rather, the statute permits compensation in a case where a defendant allows `"the interest monies on the [defendant's money reserves] to accumulate to the benefit of the party required to pay and to the detriment of the party to whom the money is to be paid."'" (Mar. 29, 1996), 6th Dist. No. OT-95-018.
 {¶ 19} The City argues R.C. 1343.03(C) cannot apply to Allied's claim against it since the claims in Allied's original complaint were for breach of contract and declaratory judgment rather than for tortious conduct. It contends it would be unfair to judge its actions under the standard for R.C. 1343.03(C) since "the case did not become a tort action until midway through trial."
 {¶ 20} This argument ignores our previous opinion. In that decision, we held that Allied pled a claim for conversion in its original complaint. See Allied at ¶ 73-77. After examining the complaint, we concluded that "the City had notice of Allied's claim of conversion from the inception of the lawsuit and could not be prejudiced by an amendment to the complaint that made this claim more clear." Id. at ¶ 77. Thus, contrary to the City's claims, this case was, among other things, a tort action from the beginning. It did not suddenly become one midway through the trial. Accordingly, it would not be unfair to apply R.C.1343.03(C) in this case. Nevertheless, these procedural facts have some bearing on other aspects of our analysis.
 Fully Cooperate in Discovery {¶ 21} Allied first claims the City failed to fully cooperate in discovery. Allied argues that it was forced to move for discovery sanctions twice and that this demonstrates that the City failed to fully cooperate with discovery.
 {¶ 22} The Ohio Supreme Court has not provided any guidance regarding what is or is not "full cooperation in discovery". Nevertheless, we agree with Judge Connor's statement that "[t]he crux of [a] court's inquiry when examining cooperation in discovery is to assure that the parties were not deprived of information necessary to make a well-informed decision with respect to settlement." Watson v. Grant Med. Ctr.,123 Ohio Misc.2d 40, 2003-Ohio-2704, ¶ 39; see also Borucki v. Skiffey
(Sept. 14, 2001), 11th Dist. Nos. 2000-T-0029, 2000-T-0057 (Defendant did not fully cooperate in discovery since his failure to inform his attorney of certain facts caused his attorney to evaluate the case at a much lower level). There is no general rule defining when a party has failed to fully cooperate in discovery and nor should there be. A bright-line would take some of the discretion away from the trial judge and it could potentially hide the realities of any particular situation.
 {¶ 23} Generally, when appellate courts affirm a trial court's conclusion that a party has failed to fully cooperate in discovery, the defendant has failed to comply with one or more discovery requests. For instance, in Smith v. Ruben (Aug. 16, 2001), 10th Dist. No. 00AP-1320, the defendants failed to comply with plaintiff's requests for discovery and failed to identify and disclose expert witnesses. The appellate court determined this was sufficient to demonstrate that the defendants did not fully cooperate in discovery. Likewise, in Copp v. Clagg (Feb. 22, 1990), 3rd Dist. No. 13-88-16, the defendants did not answer certain interrogatories until ordered to do so by the trial court. The appellate court affirmed the trial court's conclusion that the defendants did not fully cooperate in discovery. And inKlinebriel v. Smith (Feb. 6, 1996), 4th Dist. No. 94CA1641, the appellate court affirmed the trial court's finding that the defendants failed to fully cooperate in discovery since there were "several instances" on the record supporting that conclusion. These included at least one instance where the defendants failed to produce some requested documents.
 {¶ 24} But not all instances involving a failure to fully cooperate in discovery deal with a failure to comply with a discovery request. For example, in Borucki the defendant did not violate the Civil Rules pertaining to discovery in the same way as in Smith, Copp and Klinebriel. Instead, his own inconsistent account of events and his failure to inform his counsel and expert of certain facts caused delays in discovery and caused his attorney to improperly evaluate the case. And yet it does not appear that he was ever sanctioned for his actions. Nevertheless, the appellate court affirmed the trial court's conclusion that he failed to fully cooperate in discovery.
 {¶ 25} Finally, when reviewing whether or not a defendant has fully cooperated in discovery, appellate courts have avoided concluding that a trial court has abused its discretion when the trial court finds that the party has fully cooperated in discovery. See Edward L. Gilbert Co., LPA v. Levy (Mar. 27, 1996), 9th Dist. No. 17292. In doing so, courts cite the trial court's discretion and its ability to referee the dispute between the parties. Id.
 {¶ 26} In this case, Allied does not allege that the City completely failed to comply with a discovery request. Instead, it argues that the City delayed complying with certain discovery requests and that those delays required Allied to move for discovery sanctions twice. And Allied argues that this delayed compliance demonstrates that the trial court abused its discretion when it found that the City fully cooperated in discovery. But after reviewing the entire record in this case, we cannot say the trial court abused its discretion.
 {¶ 27} Clearly, there was some sort of agreement to suspend discovery. But it is not clear from the evidence what the scope of that agreement was and it is not clear when this agreement lapsed. Thus, when Allied's letters kept referring to the missing documents and Bozanich's deposition, the City could have reasonably believed that Allied was merely reminding it of the outstanding discovery requests when the parties resumed discovery. And although the City did not turn over the requested documents and allow Bozanich to be deposed as soon as Allied would have liked, this was done over a year and a half before the trial court's final discovery deadline. It was not unreasonable for the trial court to conclude that the City's actions did not have an adverse affect on whether or not the parties chose to settle the case. Allied's argument to the contrary is meritless.
 Unnecessary Delay {¶ 28} Allied next claims that the trial court abused its discretion because its judgment entry did not address whether or not the City unnecessarily delayed the proceedings. In addition, it contends that the City actually did unnecessarily delay the proceedings. Allied's argument is correct in one respect. The trial court's judgment entry fails to specifically analyze whether or not the City unnecessarily delayed the proceedings. But this is harmless error. The City did not unnecessarily delay the proceedings.
 {¶ 29} The City requested that the trial be continued two times. The first, on April 29, 1997, was because the City's attorney was involved in a jury trial that would not be completed by the scheduled trial date for this case. Clearly, this is good cause for a continuance and Allied does not contend that this was an unnecessary delay.
 {¶ 30} The City's second motion for a continuance was filed on August 6, 1999. At that time, trial was scheduled for August 9, 1999. In that motion, the City claimed that it received a packet of material from Allied on August 4, 1999 which contained reports of proposed experts. And it further claimed that one of the proposed experts had not been previously disclosed and that the other proposed expert had altered his opinion. Accordingly, the City moved that the experts either be excluded or that the trial court grant a continuance so the City could conduct discovery to determine if experts of its own were warranted. Clearly, this is also good cause for a continuance. Accordingly, the trial court granted the motion.
 {¶ 31} Allied claims the City never deposed the experts who were the subject of the August 9th motion and did not move for summary judgment after that motion was granted. Thus, it believes this is evidence that the continuance was "a pure dilatory tactic". But the evidence does not support this conclusion. In an affidavit by the City's trial counsel, which was attached to its response to Allied's motion for prejudgment interest, counsel stated that the City retained its own expert to review Allied's new expert reports. This expert did not testify at trial, but this is not of any import. The City requested the continuance so it could prepare for Allied's experts and it did so. There is no evidence that the City did not act in good faith when it requested this continuance. Allied's arguments to the contrary are meritless.
 Rational Evaluation of Risks and Liabilities {¶ 32} Allied argues the City's actions demonstrate that it failed to rationally evaluate its risks and potential liabilities. Allied claims the City never investigated the site to see if there was any slag or ballast other than that immediately below the tracks, refused to look at Allied's contractual documents with PLE when Allied first approached the City's law director, failed to produce any evidence contradicting Allied's expert's calculation of the value of the slag, and failed to offer a single document that supported its position at trial. Allied contends that if the City believed it had no liability, then it would have moved for summary judgment, but it did not. And it argues that the City's decision to sell the slag to a third party during the course of this litigation demonstrates that it did not rationally evaluate its risks.
 {¶ 33} "In assessing the risk of any occurrence, including the potential of civil liability, it would seem reasonable that one must evaluate both the likelihood of the event occurring, i.e. its probability, and its impact if it should happen, i.e. its magnitude. Events that have a low probability of occurring, yet will be accompanied by an impact of great magnitude if they do happen, should properly be treated differently than those where the probability and the magnitude of the event are both low. Likewise, high probability and low impact may require a different approach. A rational approach considers both factors."Wagner v. Marietta Area Health Care, Inc. (Mar. 16, 2001), 4th Dist No. 00CA17.
 {¶ 34} In this case, the City determined that there was a very low likelihood that it would be found liable and this belief was rational. In its complaint, Allied pled an action for conversion, but it did not specifically mention that it was seeking recovery under this legal theory. Instead, Allied specifically pled two claims, one for breach of contract and one for declaratory judgment. The City prevailed on each of these specifically stated claims at trial when the trial court granted it a directed verdict on those claims. Moreover, Allied did not challenge the directed verdict on appeal. Finally, the City's belief that it was immune from suit on the tort claim is reasonable given the fact that the trial court granted judgment notwithstanding the verdict to the City on that issue, even though that decision was reversed on appeal.
 {¶ 35} Furthermore, even though the City had a rational belief that there was a low likelihood that it would be found liable, it engaged in extensive settlement negotiations with Allied during the course of the litigation. Prior to trial, each party made non-monetary settlement offers. For instance, Allied agreed to settle the case if the City agreed to one of several options, including transfer of property, extending a tax abatement, replacing storm sewers, or granting salvage rights to various properties to Allied. And after the City sold some of the slag to a third party, it offered to allow Allied to remove the remaining slag from the property and the right to remove slag from a second property. And immediately prior to trial, each party made a monetary offer to the other. The City offered to pay Allied $100,000 and the right to remove any remaining slag on the property, the price of which was evaluated at between $500,000 and $1,500,000. Allied believed that it was not cost effective to remove the remaining slag and demanded $1,700,000 in settlement.
 {¶ 36} Given these facts, the trial court did not abuse its discretion when it concluded that Allied rationally evaluated its risks and potential liabilities. Allied rationally believed that there was a low likelihood that it would be found liable and it made an offer which reflected that belief. Allied's argument to the contrary is meritless.
 Good Faith, Objectively Reasonable Belief in Non-Liability {¶ 37} Allied next argues that the City did not make a good faith monetary settlement offer or respond in good faith to an offer from Allied. The City contends that this court does not need to address this since it possessed a good faith, objectively reasonable belief that it was not liable to Allied. As stated above, the Ohio Supreme Court has added that a party need not make a monetary settlement offer if he has a good faith, objectively reasonable belief that he has no liability. Kalain.
 {¶ 38} Although the trial court did not specifically find that the City did possess a good faith, objectively reasonable belief that it was not liable, this was clearly the basis of its decision. It noted that the City's contract with PLE stated that Allied was entitled to the "rail track materials and ties" without any mention of slag or salvageable ballast. And it noted that PLE's president told the City's finance director that the City owned all slag and ballast on the property except for that directly under the railroad tracks. The trial court concluded that, based on this evidence, it was "easy to see" why the City would believe it owned the slag and that it legitimately believed it would have no liability.
 {¶ 39} A review of the facts in this case demonstrates that the trial court did not abuse its discretion when it made this conclusion. Allied's complaint against the City specifically stated two causes of action, declaratory judgment and breach of contract. After the evidence was presented at trial, the trial court granted a directed verdict to the City on each of these claims and Allied did not challenge this decision on appeal. This gives credence to the City's claim that it had a good faith, objectively reasonable belief that it would not be found liable on those causes of action.
 {¶ 40} The trial court instructed the jury on two torts, conversion and tortious interference with a contract after finding that the complaint set forth the elements of those torts. Of course, the jury rendered a verdict in Allied's favor. But the trial court found that the City was not liable for those damages under the Political Subdivision Tort Liability Act and granted it JNOV. The City is only liable because Allied was successful on appeal. It is difficult to conclude that a defendant does not have a good faith, objectively reasonable belief that it would not be found liable on an issue if the trial court eventually grants the defendant's motions for directed verdict and JNOV. Given these facts and the standard of review, we must conclude that this argument is also meritless.
 Bad Faith {¶ 41} Finally, Allied believes that the trial court's decision was flawed because it applied a "bad faith" standard rather than examining the City's actions for a lack of good faith. But we will not reverse a trial court's decision on prejudgment interest merely because it mentions bad faith or makes findings related to bad faith. Instead, we will only reverse a trial court's decision which "seems to rest on the incorrect test of `bad faith'". Miller v. Miller MillerAccountants, Inc., 5th Dist. No. 2002-CA-0068, 2003-Ohio-5913, ¶ 44. As long as the trial court uses the Kalain factors and determines that the defendant has made a good faith effort to settle the case, any reference to bad faith on the defendant's part can be ignored. DiMario v. Aras (Oct. 29, 1999), 1st Dist. No. C-990107.
 {¶ 42} This case is a perfect example of that principle. Here, the trial court stated the proper standard and made the findings required by Kalain. But in its conclusion it became the victim of linguistic imprecision and muddled the distinction between a lack of good faith and the existence of bad faith. This is clearly not the best practice. Nevertheless, the trial court used the Kalain factors to make its decision and found that Allied proved none of those factors. Accordingly, the trial court's unfortunate reference to whether or not the City acted in bad faith is just that, a misstatement which had no bearing on the trial court's substantive decision. Because the trial court used the proper factors to reach its decision, its reference to whether or not the City acted in bad faith can be ignored. Allied's argument to the contrary is meritless.
 Conclusion {¶ 43} In conclusion, Allied's sole assignment of error is meritless. We must review the trial court's decision for an abuse of discretion and apply the right test when determining whether or not Allied was entitled to prejudgment interest. After reviewing the facts, we conclude that the evidence supports the trial court's conclusions regarding each of the Kalain factors. Accordingly, we conclude that the trial court did not abuse its discretion when denying Allied's motion for prejudgment interest and the judgment of the trial court is affirmed.
Donofrio, J., concurs.
Vukovich, J., concurs.