JOURNAL ENTRY and OPINION
{¶ 1} Plaintiff-appellant, Russell Pierce ("Pierce"), appeals the trial court's denial of his motion for prejudgment interest from the defendant-appellee, Pridemark Homes, Inc. ("Pridemark"), following a jury verdict in his favor. We find no merit to this appeal and affirm.
 {¶ 2} The underlying case stems from injuries Pierce sustained on November 13, 1996, when he fell as he walked across the front yard of a home construction site controlled by Pridemark. He worked for East Ohio Gas Company and was on the premises to install a gas meter for the new home. Because yellow caution tape had been placed across the property's driveway, Pierce proceeded across the snow-covered front yard. He had walked approximately twenty feet when "the ground gave way" beneath him. He determined that his fall was the result of what appeared to be a "cylindrical" hole in the ground with a depth of approximately two feet, under twelve inches of snow. Pierce sustained extensive back injuries as a result of the fall.
 {¶ 3} On May 2, 1997, Pierce brought suit against Pridemark and various subcontractors, alleging that the defendants were jointly negligent in failing to barricade the excavation area and in failing to warn against the danger. Prior to trial, Pierce voluntarily dismissed the case without prejudice and refiled it on August 2, 2000. Trial commenced on April 29, 2002.
 {¶ 4} The jury found in favor of Pierce and awarded him $228,000 in compensatory damages and $400,000 in future damages. Pierce subsequently moved for prejudgment interest. The trial court stayed the motion pending the outcome of Pridemark's appeal of the jury verdict. Following this court's affirmance of the jury verdict in Pierce v. Pridemark Homes,Inc., Cuyahoga App. No. 81362, 2003-Ohio-1952, the trial court set the motion for hearing.
 {¶ 5} The evidence presented at the hearing revealed that Pridemark was insured under a policy issued by State Farm Fire and Casualty Company ("State Farm") which carried $1,000,000 in liability coverage. Pierce's counsel, Robert Vecchio and David Shillman, made their first and only settlement demand of $225,000 on March 25, 2002, a few days before the final pretrial. Their settlement demand was based on their belief that Pierce's injuries were permanent and that Pridemark faced the most liability.
 {¶ 6} State Farm's claims representative, William Matwijiw, appeared at the final pretrial along with Pridemark's counsel, Thomas Mazanec. Mazanec and Matwijiw had settlement authority of $15,000 — $20,000 and made a settlement offer of $10,000. Pierce rejected the offer and indicated that it covered only a fraction of the estimated $40,000 in medical bills he had incurred. Mazanec and Matwijiw indicated that they were given medical bills in the amount of only $5,000 — $6,000 and were "stunned" by the alleged increased amount. The parties agreed that no further negotiations would take place until State Farm had all of Pierce's medical bills.
 {¶ 7} On April 19, 2002, almost three weeks after the final pretrial and ten days before the trial, Pierce provided Mazanec with the additional medical bills, totaling nearly $50,000. However, neither party engaged in any further settlement discussions.
 {¶ 8} Pierce offered into evidence portions of the insurance claims file and argued that State Farm failed to follow through with its own evaluation of the case, failed to follow the advice of defense counsel, and failed to make a good faith response to his demand for settlement after it received the supplemental medical bills. Pierce claimed that, although Mazanec recognized and informed State Farm that, if the jury believed his medical experts rather than the defense expert, it faced a potential liability of $200,000, State Farm ignored the information and failed to offer a larger settlement. Pierce further claimed that State Farm never increased its initial settlement offer despite its own assessment of the case as having a minimum settlement value of $20,000 and despite the overwhelming evidence of Pridemark's liability.
 {¶ 9} In contrast, Mazanec testified that he believed the jury would not find Pridemark liable. He explained that there were a number of issues with Pierce's case which weighed in favor of Pridemark. First, there was no evidence that the hole existed prior to Pierce's fall and, therefore, Pridemark had no duty to barricade or warn. Second, the fact that other subcontractors had worked on the lot also limited the possible liability of Pridemark. Finally, even if the jury attributed some negligence to Pridemark, any award would be reduced by Pierce's own contributory negligence in walking across a yard covered with a foot of snow.
 {¶ 10} Similarly, Matwijiw and his supervisor testified that their evaluation of the case never changed, even after receiving the additional medical bills. Based on the opinion of the defense medical expert, Dr. Timothy Gordon, they believed that the additional medical bills were unrelated to any injuries from the fall. They further testified that the conflicting medical testimony, coupled with the liability issues, factored into their evaluation of the case.
 {¶ 11} Finding no evidence that Pridemark failed to make a good faith effort to settle the case, the trial court denied the motion for prejudgment interest.
 {¶ 12} Pierce appeals, raising two assignments of error.
 {¶ 13} In his first assignment of error, Pierce argues that the trial court applied the wrong standard of law in determining his motion for prejudgment interest. He further claims in his second assignment of error that the trial court abused its discretion in denying his motion for prejudgment interest.
 {¶ 14} A trial court's decision to deny prejudgment interest will not be disturbed absent an abuse of discretion, i.e., whether the trial court acted unreasonably, arbitrarily, or unconscionably. Cashin v. Cobett,
Cuyahoga App. No. 84475, 2005-Ohio-102, citing Huffman v. Hair Surgeon,Inc. (1985), 19 Ohio St.3d 83. Thus, our review is limited to whether there was some competent, credible evidence to support the trial court's judgment. Id.
 {¶ 15} Pierce sought prejudgment interest under former R.C. 1343.03
(C),[1] which provides:
"Interest on a judgment, decree, or order for the payment of moneyrendered in a civil action based on tortious conduct and not settled byagreement of the parties, shall be computed from the date the cause ofaction accrued to the date on which the money is paid if, upon motion ofany party to the action, the court determines at a hearing heldsubsequent to the verdict or decision in the action that the partyrequired to pay the money failed to make a good faith effort to settlethe case and that the party to whom the money is to be paid did not failto make a good faith effort to settle the case."
 {¶ 16} In Kalain v. Smith (1986), 25 Ohio St.3d 157, syllabus, the Ohio Supreme Court set forth four factors a trial court should consider in determining whether a party has made a good faith effort to settle a case: (1) whether the party has fully cooperated in discovery proceedings, (2) whether the party has rationally evaluated his or her risk and potential liability, (3) whether the party has attempted to unnecessarily delay any of the proceedings, and (4) whether a good faith monetary offer was made, or responded to in good faith if made by the other party. However, if a party has a good faith, objectively reasonable belief that he or she has no liability, then no monetary settlement offer is necessary. Id.
 {¶ 17} The moving party bears the burden of demonstrating that the other party failed to make a good faith effort to settle the case.Moskovitz v. Mt. Sinai Med. Ctr., 69 Ohio St.3d 638, 1994-Ohio-324. Although the burden is heavy, the burden does not include the requirement that the other party acted in bad faith. Id. In fact, "[a] party may have failed to make a good faith effort to settle even though he or she did not act in bad faith." Id. at 659. Accordingly, for purposes of R.C.1343.03(C), the phrase "failed to make a good faith effort to settle" does not mean the same as "bad faith." Id., at paragraph two of the syllabus.
 {¶ 18} Pierce argues that the trial court erroneously applied a "bad faith" standard in ruling on his motion for prejudgment interest.
 {¶ 19} Although we agree that the trial court improperly included language pertaining to a "bad faith" standard,[2] we cannot say that its decision rests on this standard. Rather, we find that its order, taken in its entirety, reflects the application of the proper "good faith" standard. Thus, we find this case distinguishable from those cases relied on by Pierce that involve a trial court applying a "bad faith" standard. See, e.g., Maynard v. Eaton, Marion App. No. 9-03-48,2004-Ohio-3025; Miller v. Miller Miller Accountants, Inc., Richland App. No. 2002-CA-0068; Berdyck v. Shinde (1996), Ottawa App. No. OT-95-018.
 {¶ 20} In the instant case, the trial court enumerated each of theKalain factors and found that there was insufficient evidence to satisfy "the standards imposed by R.C. 1343.03(C)." As discussed below, this conclusion is supported by the record. Further, the trial court specifically found that State Farm was not required to offer any settlement based on its objectively reasonable belief as to its lack of liability. Again, this finding is based on the proper "good faith" standard as articulated in Kalain. Accordingly, because we find that the trial court relied on the "good faith" standard in reaching its decision, we find it unnecessary to reverse and remand for a new hearing merely due to the trial court's reference to "bad faith." See AlliedErecting Dismantling Co. v. City of Youngstown, Mahoning App. No. 03-MA-179, 2004-Ohio-3665 (trial court's reference to "bad faith" can be ignored when it relied on the Kalain factors to reach its decision);DiMario v. Aras (Oct. 29, 1999), Hamilton App. No. C-990107 (trial court's inclusion of "bad faith" language does not require reversal when court applied Kalain factors).
 {¶ 21} Next, Pierce argues that the trial court abused its discretion in denying his motion for prejudgment interest. Although he concedes that State Farm and its insured fully cooperated in discovery and did not delay any of the proceedings, he claims that they failed to rationally evaluate their risks and potential liability and, in turn, failed to make a good faith offer. We disagree.
 {¶ 22} Our review of the record reveals that State Farm rationally considered its possible liability. Although Pierce ultimately prevailed at trial, we cannot say that State Farm's evaluation of its case was unreasonable. There was no evidence that the hole existed prior to Pierce's fall. According to the defense theory at trial, a subcontractor improperly "backfilled" the hole, and when Pierce stepped in the area, the ground gave way and he fell. Based on this theory, Pridemark faced no liability. Additionally, State Farm considered that the jury could find Pierce comparatively negligent. Pierce's supervisor acknowledged that it was improper company procedure for an employee to walk across a yard covered with a foot of snow. Furthermore, because Pridemark was not the only defendant, the jury could attribute liability to the subcontractor or apportion it between the defendants. Further, Dr. Gordon testified that Pierce's injuries from the fall were not permanent. Based on these numerous factors and the disputed medical evidence, we find that State Farm rationally evaluated its case.
 {¶ 23} We find no merit to Pierce's contention that the trial court ignored State Farm's claims file in denying the motion for prejudgment interest. Pierce argues that State Farm was aware of its significant liability despite any statements to the contrary at the prejudgment interest hearing. In support of this assertion, he refers to a series of notations made by Mazanec in his pretrial reports, indicating that "[t]he jury will not turn away the plaintiff completely," that "the verdict could be as high as $200,000 if the jury believed the plaintiff's medical experts," and that the case had a settlement value "somewhere between $40,000 — $50,000." However, Pierce construes these notations in isolation and out of context, failing to consider the entire claims file.
 {¶ 24} In the instant case, State Farm responded to the first and only demand in good faith, based on the medical bills that had been provided at the time of the final pretrial. Although Pierce's counsel found State Farm's offer to be an unacceptable response to his demand, we find that the offer was reasonable based on the limited medical bills that had been provided. After the additional medical bills were provided, Pierce's counsel should have initiated further settlement discussions. See Sindelv. Toledo Edison Co. (1993), 87 Ohio App.3d 525, 533 (party seeking prejudgment interest must demonstrate its aggressive settlement efforts). Here, there was no evidence in the record that State Farm would have refused to negotiate further if Pierce's counsel had pursued it. Further, given the presence of another defendant in the case, Mazanec's ultimate determination that the jury would award some money to the plaintiff does not mean that it would find Pridemark liable. Finally, we find no error in State Farm's reliance on its medical expert over Pierce's expert. Compare Detelich v. Gecik (1993), 90 Ohio App.3d 793
(insurer ignored all medical evidence when evaluating plaintiff's injuries).
 {¶ 25} Accordingly, we find that the trial court applied the proper standard of law and that competent, credible evidence exists to support the denial of prejudgment interest. Thus, the first and second assignments of error are overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, A.J. and Celebrezze, Jr., J. Concur.
[1] The statute was amended effective June 2, 2004, but, because the trial court's order was rendered prior to the amendment, the earlier version of the statute governs.
[2] In its order, the trial court stated, inter alia, "that a lack of good faith precluding prejudgment interest means more than poor judgment or negligence and implies dishonest purpose, conscious wrongdoing, or ill will in the nature of fraud." This statement of law was subsequently overruled by the Ohio Supreme Court in Moskovitz, supra.