[Cite as *Segedy v. Cardiothoracic & Vascular Surgery of Akron, Inc.*, 2011-Ohio-6597.]

STATE OF OHIO       )              IN THE COURT OF APPEALS

                       )ss:        NINTH JUDICIAL DISTRICT

COUNTY OF SUMMIT    )

IAN R. SEGEDY, Indiv. and as Admin. of       C.A. No.     25787
the Estate of CHRISTINA MARIE
SEGEDY, Deceased, et al.

      Appellants                      APPEAL FROM JUDGMENT
                                   ENTERED IN THE
      v.                           COURT OF COMMON PLEAS
                                   COUNTY OF SUMMIT, OHIO
CARDIOTHORACIC AND VASCULAR     CASE No.    CV2006-01-0149
SURGERY OF AKRON, INC., et al.

      Appellees

DECISION AND JOURNAL ENTRY

Dated: December 21, 2011

Per Curiam.

**{¶1}** Appellants, Ian R. Segedy, et al., appeal from the judgment of the Summit County Court of Common Pleas. This Court reverses and remands.

I.

**{¶2}** In a prior appeal, *Segedy v. Cardiothoracic & Vascular Surgery of Akron, Inc.*, 182 Ohio App.3d 768, 2009-Ohio-2460, this Court set forth the underlying factual and procedural history as follows:

> "At 30 years of age, Christina Segedy suffered from heart and lung problems likely caused by rheumatic fever. In June 2001, she saw Dr. Islam Ibrahim, a pulmonologist, who diagnosed mitral stenosis, meaning that her mitral valve was restricting the flow of blood through her heart. On Friday, September 21, 2001, Mrs. Segedy's cardiologist performed a heart catheterization to further evaluate the problem. The test revealed unobstructed coronary arteries, but critical mitral stenosis. The cardiologist called Netzley, a cardiothoracic surgeon, for a consult. Netzley scheduled mitral-valve-replacement surgery for Monday, September 24, 2001. Although the cardiologist advised Mrs. Segedy to remain in the hospital

over the weekend, she signed herself out, explaining that she wanted to see her children before the surgery.

"On Monday morning, Netzley performed mitral-valve-replacement surgery. The procedure required that Mrs. Segedy's heart be stopped and clamped off temporarily while a machine did the work of her heart and lungs. When the procedure was finished, Netzley determined that Mrs. Segedy was stable and transferred her to the intensive-care unit.

"Soon nurses realized that Mrs. Segedy's heart was not pumping well and, along with Netzley, began a series of measures designed to improve heart function. They administered various medications and fluids and ran tests. Netzley re-opened Mrs. Segedy's chest and tried open heart massage. He also inserted a balloon pump to try to improve blood flow. After several hours, Netzley returned Mrs. Segedy to the operating room and placed her on a ventricular-assist device. After more tests, doctors informed Mr. Segedy that his wife was brain dead. Mrs. Segedy was removed from life support on September 28, 2001.

"Mrs. Segedy's husband, Ian Segedy, sued Netzley and his corporation, Cardiothoracic and Vascular Surgery of Akron, Inc., as well as Mrs. Segedy's pulmonologist, Dr. Ibrahim, and his corporation, Summit Pulmonary & Internal Medicine Inc., for medical negligence. At trial, Mr. Segedy claimed that Ibrahim had violated the standard of care by failing to properly complete or reschedule a bronchoscopy, proximately causing Mrs. Segedy's death through a delay in diagnosis. Mr. Segedy accused Netzley of violating the standard of care by transferring Mrs. Segedy from the operating room too soon after surgery and by failing to immediately return her to the operating room for appropriate treatment thereafter, proximately causing her death. The jury returned a unanimous verdict in favor of Ibrahim and his corporation. The trial court entered judgment on that verdict, and it was not appealed. * * *

"The jury also returned a general verdict for Mr. Segedy and against Netzley in the amount of $1,755,300. It was signed by only six jurors, one of whom had not signed the liability interrogatories supporting the verdict. After twice returning for further deliberations, the jury returned the final time with a reduced verdict against Netzley. The final verdict was signed by the same six jurors who had signed the liability and damages interrogatories. All eight of the jurors had also signed an interrogatory assigning 22 percent comparative negligence to Mrs. Segedy. The trial court denied Netzley's motion for a mistrial and entered judgment on the verdict for plaintiff, reduced by 22 percent for comparative negligence.

"One month later, the trial court denied Netzley's motion for judgment notwithstanding the verdict, but granted his motion for a new trial based on juror confusion and a response to an interrogatory referencing some evidence that had been excluded. Mr. Segedy appealed, arguing that a new trial was not warranted and that the trial court should have granted his motion for judgment

notwithstanding the verdict regarding the assignment of comparative negligence. He also argued that the jury's comparative-negligence finding was against the manifest weight of the evidence. Netzley appealed, arguing that his directed-verdict motions and motion for judgment notwithstanding the verdict should have been granted because Mr. Segedy failed to prove proximate cause." Id. at ¶3-8.

**{¶3}** On appeal, this Court reversed the judgment of the trial court because "(1) the jury's interrogatory responses were consistent with the general verdict form following a reconciliation instruction that did not taint the verdict, and (2) references to the length of the surgery did not deprive Netzley of a fair trial." Id. at ¶2. We held that "[t]he trial court incorrectly denied Mr. Segedy's motion for judgment notwithstanding the verdict regarding contributory patient negligence because, based on the evidence, reasonable minds could only conclude that any lack of care by Mrs. Segedy in smoking or failing to follow her physicians' advice did not proximately cause her death" and that "[t]he trial court correctly denied Netzley's motion for judgment notwithstanding the verdict because reasonable minds could have differed regarding whether Netzley's actions proximately caused Mrs. Segedy's death." Id. The matter was remanded and the trial court was ordered to enter judgment on the jury's verdict without reducing it for comparative negligence. Id. at ¶71.

**{¶4}** On June 3, 2009, the trial court entered judgment on the verdict in the amount of $1,705,300. On June 16, 2009, Mr. Segedy filed a motion for prejudgment interest. An evidentiary hearing was held on December 20, 2010. The motion was denied on December 30, 2010.

**{¶5}** Mr. Segedy timely filed an appeal and raises one assignment of error for our review.

II.

## ASSIGNMENT OF ERROR

"THE TRIAL COURT ERRED IN FAILING TO AWARD PREJUDGMENT INTEREST TO [MR.] SEGEDY."

{¶6}   In his sole assignment of error, Mr. Segedy argues that the trial court erred in failing to award prejudgment interest.  We reverse the trial court's decision and remand the matter for proceedings consistent with this opinion.

{¶7}   R.C. 1343.03 provides that prejudgment interest may be awarded in the following instance:

> "If, upon motion of any party to a civil action that is based on tortious conduct, that has not been settled by agreement of the parties, and in which the court has rendered a judgment, decree, or order for the payment of money, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case * * *."  R.C. 1343.03(C)(1).

{¶8}   According to the Ohio Supreme Court, "[a] party has not 'failed to make a good faith effort to settle' under R.C. 1343.03(C) if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party."  *Kalain v. Smith* (1986), 25 Ohio St.3d 157, syllabus.  However, "[i]f a party has a good faith, objectively reasonable belief that he has no liability, he need not make [the] monetary settlement offer" required in the fourth factor. Id.

{¶9}   "We review a trial court's determination regarding whether a party made a 'good faith effort' to settle for an abuse of discretion."  *Kane v. Saverko*, 9th Dist. No. 23908, 2008-Ohio-1382, at ¶9.  Abuse of discretion connotes more than simply an error in judgment; the court

must act in an unreasonable, arbitrary, or unconscionable manner. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219. As a threshold matter, however, we must first examine whether the components of R.C. 1343.03(C) have been satisfied. *Kane* at ¶9. Such a determination constitutes a question of law, which this Court reviews de novo. *Porter v. Porter*, 9th Dist. No. 21040, 2002-Ohio-6038, at ¶5.

{¶10} Mr. Segedy argues that the trial court erred in failing to award prejudgment interest because it applied the wrong standard of law. Specifically, he contends that the trial court erred in concluding that Appellees did not act in "bad faith" rather than determining that they acted in "good faith." Ohio courts have repeatedly held that although the moving party, in this case Mr. Segedy, bears the burden of demonstrating that the other party failed to make a good faith effort to settle the case, "the burden does not include the requirement that the other party acted in bad faith." *Pierce v. Pridemark Homes, Inc.*, 8th Dist. No. 84841, 2005-Ohio-1191, at ¶17, citing *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638. "In fact, '[a] party may have failed to make a good faith effort to settle even though he or she did not act in bad faith.'" *Pierce* at ¶17, citing *Moskovitz*, 69 Ohio St.3d at 659.

{¶11} This Court acknowledges that there are instances where a trial court's improper use of the term "bad faith" does not amount to the use of an erroneous "bad faith" standard if the trial court's order, "taken in its entirety, reflects the application of the proper 'good faith' standard." *Pierce* at ¶19. See, also, *Allied Erecting & Dismantling Co. v. City of Youngstown*, 7th Dist. No. 03-MA-179, 2004-Ohio-3665 (trial court's reference to "bad faith" can be ignored when it relied on *Kalain* factors to reach its decision); *DiMario v. Aras* (Oct. 29, 1999), 1st Dist. No. C-990107 (trial court's inclusion of "bad faith" language does not require reversal when court applied *Kalain* factors). But, see, *Maynard v. Eaton Corp.*, 3d Dist. No. 9-03-48, 2004-

Ohio-3025, at ¶35 (where the trial court's decision seems to rest on "the incorrect test of 'bad faith,'" an appellate court must reverse and remand for a determination of whether the parties acted in accordance with R.C. 1343.03(C)).

{¶12} The trial court's order denying prejudgment interest in this case specifically stated: "The Court has considered the evidence presented at the hearing for prejudgment interest and finds no evidence of bad faith on the part of the defendants, including the insurance companies." In review of that entry, it appears that the trial court applied the wrong standard of law. Mr. Segedy was only required to show that the Appellees did not make a good faith effort to settle; he was not required to demonstrate that Appellees acted in bad faith. *Pierce* at ¶17, citing *Moskovitz*, 69 Ohio St.3d at 659.

{¶13} Although it appears to address the *Kalain* factors, taken in its entirety, the order does not reflect the proper "good faith" standard. Within the fourth *Kalain* factor, a party is required to make "a good faith monetary settlement offer or respond[] in good faith to an offer from the other party" unless it has an "objectively reasonable belief that he has no liability." *Kalain*, 25 Ohio St.3d at syllabus. This exception is to be "strictly construed so as to carry out the purposes of R.C. 1343.03(C)." *Moskovitz*, 69 Ohio St.3d at 659. Here, the order mentions that Appellees cooperated in discovery, did not delay the case, and properly evaluated the risks and potential liability in this case. It is not clear, however, that the trial court determined that Appellees had a good faith, objectively reasonable belief that they had no liability, and thus no settlement offer was necessary. The trial court order mentions that Appellees had a "good faith belief that [they] had no liability" and that "[t]he parties had good reason to believe they had a defensible case." It further finds that Appellees "had a good faith belief in the defensibility of their case[.]" No where does it state that the belief was objectively reasonable. See, e.g., *Loder*

*v. Burger* (1996), 113 Ohio App.3d 669, 675 ("A party holding an objectively unreasonable belief in nonliability is not excused from the obligation to enter into settlement negotiations, and cannot insulate himself from liability for prejudgment interest by relying on his own naiveté.").

**{¶14}** Because we are required to strictly construe the "objectively reasonable belief" exception to the requirement to make a settlement offer, and because we conclude that the order fails to reflect the proper "good faith" standard, this Court cannot ignore the erroneous reference to "bad faith." Therefore, we must reverse and remand on this issue for a determination as to whether each party acted in accordance with the four mandates of R.C. 1343.03(C) and, specifically, whether Appellees had a good faith, objectively reasonable belief that they had no liability. Mr. Segedy's assignment of error is sustained.

### III.

**{¶15}** Mr. Segedy's assignment of error is sustained. The judgment of the Summit County Court of Common Pleas is reversed and the cause is remanded for proceedings consistent with this opinion.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellees.

_____
EVE V. BELFANCE
FOR THE COURT

BELFANCE, P. J.
CARR, J.
CONCUR

MOORE, J.
DISSENTS, SAYING:

{¶16} Although I agree with the majority's analysis through paragraph 11, I must respectfully dissent from its conclusion in paragraphs 12-14. I would conclude instead that the trial court's language that Appellees had a "good faith belief that [they] had no liability" taken together with the court's conclusion that they "had good reason to believe they had a defensible case" can be interpreted to mean that the trial court found their belief to be objectively reasonable, thus satisfying the fourth *Kalain* factor. As such, I would conclude that the trial court's order, "taken in its entirely, reflects the application of the proper 'good faith' standard," and would therefore affirm the judgment of the trial court. *Pierce* at ¶19.

APPEARANCES:

MICHAEL E. EDMINISTER, Attorney at Law, for Appellant.

STEPHEN P. GRIFFIN and MICHAEL J. KAHLENBERG, Attorneys at Law, for Appellees.