OPINION
{¶ 1} Defendant-appellant, Joseph A. Dinger, appeals the judgment of the Carroll County Common Pleas Court revoking his community control sanctions and re-imposing his suspended sentence.
 {¶ 2} On June 27, 2002, appellant accepted a plea agreement with plaintiff-appellee, the State of Ohio, to plead guilty to three out of six charges against him. Based upon this agreement, the trial court found appellant guilty on all three counts of burglary in violation of R.C. 2911.12(A)(3), all third degree felonies. The trial court then sentenced appellant to four years of incarceration on each charge, to be served concurrently. Appellant's sentence was then suspended and he was sentenced to five years of community control sanctions, subject to conditions. One condition of appellant's community control, Term Ten, stated that, "Defendant shall not own, purchase, possess, or acquire any firearm or dangerous ordnance as defined by the Ohio Revised Code and shall surrender all firearms within twenty-four (24) hours to the Carroll County Sheriff for retention until probation is completed."
 {¶ 3} On November 9, 2004, appellant's probation officer, Michael Jones, visited appellant's home to see if appellant possessed chainsaws that had been stolen. When Officer Jones and another officer arrived at the house, appellant's girlfriend, Cristina (or Christen) Heinzman (Heinzman) greeted them. Appellant was not home at the time of the visit. Jones explained the reason for the visit to Heinzman and informed her that a search of the home needed to be done. Before conducting a search inside the house, Jones asked Heinzman whether there were any firearms in the house. Heinzman replied in the affirmative and produced a loaded twelve-gauge shotgun from behind the couch. Heinzman then informed Officer Jones that the gun was hers and not appellant's.
 {¶ 4} On November 10, 2004 Jones had appellant report to his office for questioning about the gun. During this questioning appellant admitted that he was aware that the gun was in the residence, and that the presence of a gun in his home was a violation of his probation. On this same day, Officer Jones filed a Request for Capias to take appellant into custody for violation of Term Ten of his probation. A probable cause hearing was held, at which it was determined that a merits hearing be held.
 {¶ 5} On November 18, 2004 a merits hearing was held to determine whether appellant's probation should be revoked. The only witnesses that testified at this hearing were Officer Michael Jones for appellee, and Heinzman for appellant. The undisputed facts of both testimonies from this hearing have already been discussed. The disputed facts that arose from this hearing involve how Heinzman got the gun and what she said to Officer Jones about the gun.
 {¶ 6} Heinzman testified that the gun was at the house for the protection of her and her son, while appellant was at work. She stated that Benny Savage, her mother's fiancé and of no biological relation to her, would bring the gun to the house when he came to give appellant a ride to work. Conversely, Savage would take the gun away from the house when he dropped appellant off at home after work. Heinzman further testified that while Officer Jones and herself did discuss that the gun belonged to her, the subject of where it came from never came up, nor had she given Officer Jones this explanation of Savage while he was at the home.
 {¶ 7} Officer Jones testified that he had questioned her about whether she was aware that appellant was not allowed to have any firearms. At this time, she informed him that the gun was hers. Furthermore, Officer Jones testified that he had in fact questioned Heinzman about where the gun came from. According to Officer Jones' testimony, Heinzman explanation was that she had received the gun as a gift from her uncle.
 {¶ 8} The findings of the trial court were that appellant was fully informed that firearms were not to be in any proximity to him. Furthermore, the fact that appellant knew the gun was in his home satisfies the possession restriction of firearms in Term Ten of his probation. Finding that there was substantial evidence to show that appellant violated this term of his probation, the trial court revoked appellant's probation and re-imposed the previously suspended four year, concurrent prison term upon the appellant, for three violations of R.C. 2911.12(A)(3). This appeal followed.
 {¶ 9} Due to the interrelated nature of appellant's first and second assignments of error, they will be addressed together. Appellant's first assignment of error states:
 {¶ 10} "TRIAL COURT'S JUDGMENT APPELLANT VIOLATED HIS COMMUNITY CONTROL SANCTIONS IS AGAINST THE MANIFEST WIEGHT OF EVIDENCE SINCE THERE IS INSUFFICIENT EVIDENCE AS A MATTER OF LAW TO WARRANT REVOCATION."
 {¶ 11} Appellant's second assignment of error states:
 {¶ 12} "THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING APPELLANT VIOLATED COMMUNITY CONTROL SANCTIONS."
 {¶ 13} The quantum of evidence necessary to support a trial court's revocation of probation is not "`beyond a reasonable doubt' but merely evidence of a substantial nature showing that the probationer has breached a term or condition of probation."State v. Walker (July 26, 1995), 7th Dist. No. 93-J-48, citingState v. Minagua (1974), 42 Ohio App.2d 35, 40, 71 O.O.2d 234,327 N.E.2d 791. A trial court's decision to revoke probation will not be reversed on appeal absent an abuse of discretion. Statev. Scott (1982), 6 Ohio App.3d 39, 41, 6 OBR 150, 452 N.E.2d 517. "`Abuse of discretion' means unreasonable, arbitrary, or unconscionable." State ex rel. Cranford v. Cleveland,103 Ohio St.3d 196, 2004-Ohio-4884, 814 N.E.2d 1218, ¶ 24. Further, the trial court, sitting as the trier of facts, is in the best position to weigh the evidence and determine the credibility of the witnesses. Kalain v. Smith (1986), 25 Ohio St.3d 157, 162, 25 O.B.R. 201, 495 N.E.2d 572.
 {¶ 14} Appellant argues that there was not substantial evidence in the record to support the trial court's finding that he had constructive possession of the gun. Appellant's arguments mainly focus around issues of credibility.
 {¶ 15} Appellant claims that Heinzman's explanation of Savage dropping the gun off and then removing it from the home clearly shows that appellant was never home at the time the gun was in the home. Additionally, appellant suggests that the trial court had no reason not to believe the testimony of Heinzman. In fact, appellant believes the record shows that Officer Jones was discredited by his own contradictory statements. In sum, appellant argues that because Heinzman's testimony should not have been discredited and that Officer Jones' testimony was contradictory, the trial court erred by finding that appellant had constructive possession of a firearm in violation of Term Ten of his probation.
 {¶ 16} The trial court had reason to question the credibility of Heinzman's testimony of how the gun came to be at the home. She testified that she was aware that firearms in the home were a violation of appellant's probation. However, she admitted that she never gave this explanation to Officer Jones when she produced the gun, but only told him that the gun belonged to her and not appellant. She further testified that she needed the gun in the home for protection. When questioned where the gun was located, and the presence of her child in the home with the gun, Heinzman stated that the gun was "Behind and under the couch. It's diagonal and my son could not have got to that, sir, because I had a hard time getting it for Mr. Jones." The location of the gun suggests that the gun was not in a place to be used for immediate protection, but in fact in a place of permanency. Reasonable minds could easily conclude that Heinzman was not being totally forthcoming in her testimony. There is sufficient evidence to suggest that Heinzman's explanation suggesting that the gun was never in the home at the time appellant was home was fabricated. Accordingly, the trial court was not unreasonable to discredit Heinzman's testimony.
 {¶ 17} Appellant's suggestion that Officer Jones contradicted himself, is flawed. Appellant claims that Officer Jones first testified that he couldn't recall appellant and Heinzman having an understanding that the firearm was not to be present in the home, but then later contradicted himself by testifying that Officer Jones learned that the gun belonged to Heinzman. The relevant testimony of Officer Jones that appellant points to is as follows:
 {¶ 18} "Cross-Examination of Mr. Jones by Attorney Styer [for appellant]:
 {¶ 19} "Q. Okay. And so you have not spoken with or have you spoken with Mr. Dinger in connection with this firearm?
 {¶ 20} "A. I had him report to my office the very next day, on November 10, 2004. I told him what had happened and what we had found. He admitted to me at that time that he knew it was there. He explained why it was there, why he had it, because they evidently were having some problems with prowlers or such out in their area. * * *
 {¶ 21} "Q. Now he explained to you at that time that his girl friend felt that she needed that for protection?
 {¶ 22} "A. That's what he told me.
 {¶ 23} "Q. Okay. And he explained to you at that time that there was an understanding between them that she wasn't to have that in the residence when he returned home?
 {¶ 24} "A. He explained to me that he knew he was in violation with that weapon there.
 {¶ 25} "Q. Did he explain to you, did he explain to you that he and his girl friend had an understanding that the weapon was not to be there when he was home?
 {¶ 26} "A. I don't recall that." Transcript Proceeding, pg. 9-10.
 {¶ 27} "Redirect Examination of Mr. Jones by Attorney Childers [for the State]:
 {¶ 28} "Q. Uh, when you visited the home and received the shotgun from her, was there any conversation with her about whose gun it was?
 {¶ 29} "A. Yes, there was.
 {¶ 30} "Q. Would you summarize the substance of that conversation?
 {¶ 31} "A. She did state that it was her gun, it was not Joseph's. She did state that she knew he wasn't allowed to be around firearms. I questioned, I told her that I was going to run the serial number to make sure it wasn't stolen and things like that. I asked her where the gun came from and she said her uncle gave it to her." Transcript Proceedings, pg. 19.
 {¶ 32} This testimony of Officer Jones' is referencing conversations that he had with two different people, both appellant and Heinzman. Furthermore, Officer Jones never does recall finding out that appellant and Heinzman had an understanding that the gun was not to be in the home. Officer Jones' subsequent testimony only reveals that Heinzman told him that the gun belonged to her and not appellant. Also, this only shows that Heinzman was aware that appellant was not allowed to be around firearms, not that there was any understanding between appellant and Heinzman to abide by this restriction. Accordingly, appellant's argument that Officer Jones contradicted himself is not found in the record.
 {¶ 33} Appellant further errs in his argument by suggesting that the credibility of Heinzman was the only basis for the trial court's judgment. The record shows that the trial court also considered the fact that appellant was aware that firearms were not allowed in the home. Appellant told Officer Jones the reason the firearm was in the home was for protection purposes. Additionally appellant stated to Officer Jones that he knew, pursuant to Term Ten, having a gun in his house was in violation of his probation.
 {¶ 34} The trial court was in the position to best determine whether Heinzman was credible or not. Based upon the finding that appellant violated his probation, it is clear that the trial court chose to credit Officer Jones' testimony, and further discredit Heinzman's unlikely explanation. Moreover, while appellant was not required to testify in his behalf, this may have helped to give Heinzman's story more credibility. The lack of support of Heinzman's story, the unlikelihood of this explanation, and the inconsistencies found in her testimony only helped to further discredit her testimony.
 {¶ 35} The trial court had to make a decision of whether to believe Heinzman's explanation or that of Officer Jones. While there was not any evidence to discredit Officer Jones, there were more than enough inconsistencies to discredit Heinzman's testimony. In sum, there was substantial evidence in the record to support the trial court's finding that appellant was in violation of his probation by having constructive possession of a firearm in his home.
 {¶ 36} Accordingly, appellant's first and second assignments of error are without merit.
 {¶ 37} Appellant's third assignment of error states:
 {¶ 38} "APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL CONTRARY TO THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I §§ 1 AND 10 OF THE OHIO CONSTITUTION."
 {¶ 39} To prove an allegation of ineffective assistance of counsel, the appellant must satisfy a two-prong test. First, appellant must establish that counsel's performance has fallen below an objective standard of reasonable representation.Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus. Second, appellant must demonstrate that he was prejudiced by counsel's performance. Id. To show that he has been prejudiced by counsel's deficient performance, appellant must prove that, but for counsel's errors, the result of the trial would have been different. Bradley, 42 Ohio St.3d at paragraph three of the syllabus.
 {¶ 40} Appellant bears the burden of proof on the issue of counsel's effectiveness. State v. Calhoun (1999),86 Ohio St.3d 279, 289, 714 N.E.2d 905. In Ohio, a licensed attorney is presumed competent. Id.
 {¶ 41} "In order for a court to conclude counsel was ineffective, the defendant must overcome the strong presumption that, under the circumstances, the allegedly ineffective action might be considered sound trial strategy. Strickland at 698.State v. Sallie (1998), 81 Ohio St.3d 673, 674,693 N.E.2d 267." State v. Doak, 7th Dist. No. 03-CO-15 and 03-CO-31,2004-Ohio-1548. Generally, the decision whether or not to call a witness is a trial tactic which will not sustain a claim of ineffective assistance of counsel. State v. Payton (1997),124 Ohio App.3d 552, 558, 706 N.E.2d 842. See, also, State v. Otte
(1996), 74 Ohio St.3d 555, 660 N.E.2d 711; State v. Williams
(1996), 74 Ohio St.3d 456, 659 N.E.2d 1254.
 {¶ 42} Appellant's argument that original counsel failed to call a material witness, Savage, at the revocation hearing, which would have given more credibility to Heinzman's testimony, fails to meet the Strickland two prong test amounting to ineffective assistance of counsel.
 {¶ 43} Appellant argues that Savage's potential testimony contained direct evidence explaining how the firearm came to be at appellant's home, thereby corroborating Heinzman's testimony. These arguments are based upon mere speculation of what Savage's testimony may or may not have been. Savage may have been questioned by original counsel, at which time it was determined his testimony may cause appellant more harm than benefit to him. There is no way to determine from the record exactly what Savage's testimony would have been. Appellant correctly states as much in his brief. "Such evidence, as Savage might have possessed, might have affected the outcome of the trial court's decision." [Emphasis added.] Appellant Brief, pg. 17.
 {¶ 44} Appellant is arguing both that Savage's testimony is material in that it contained direct testimonial evidence, and that this testimony would have corroborated Heinzman's testimony. Appellant does so, all the while acknowledging that he is completely unaware of what the testimony might have been, nor is there evidence in the record to suggest what Savage may have testified to. Mere speculation about the testimony of a witness that was not called at a revocation hearing is not adequate to support an argument that this evidence was both material and corroborative.
 {¶ 45} Appellant analogizes the case of State v. Owens (Mar 1, 1990), 8th Dist. No. 56577, to argue that counsel's failure to call a material witness amounts to ineffective assistance of counsel because Savage could have corroborated the witness' testimony. Owens is factually different to a magnitude of great deficiency. In Owens, there were six witnesses which original counsel failed to call. All six witnesses' testimony corroborated each other to discredit the victim. Through appellant's first and second motions for a new trial, the witnesses' testimonies were in the record for the appellate court to review. The Owens
court specifically states that the court need not speculate as to the witnesses' testimonies, because the record reveals what all six would have testified to if counsel had called them. In the case at bar, there is absolutely nothing in the record to suggest that Savage would have testified in corroboration of Heinzman's testimony, nor is there evidence that anything he may have testified to contained direct or even circumstantial evidence.
 {¶ 46} Moreover, appellant's argument has further failed to address the numerous tactical decisions that original counsel may have made in not calling Savage to testify. Original counsel may have already questioned this witness, and found that his testimony would be incredible, immaterial, or would not make a good witness for numerous other reasons.
 {¶ 47} Without more than mere speculation as to what Savage's testimony would have in fact been, and without a showing that not calling Savage as a witness amounted to more than just a tactical decision, appellant has not shown that original counsel's failure to call a witness was so material as to effectively deny appellant assistance of counsel. Additionally, there is nothing to show, nor has appellant argued, that this was nothing more than a strategic decision to put appellant in the best position that counsel could. Original counsel is licensed, and presumed a competent attorney who can make sound strategic decisions. Without overcoming this presumption, appellant's argument is defective.
 {¶ 48} Appellant must further prove that he was prejudiced by original counsel in such a way that the outcome of the hearing would have been different if Savage was called as a witness. A licensed attorney is presumed competent to make strategic decisions about how to proceed with a hearing. Original counsel may have made numerous tactical decisions in deciding not to call Savage at the revocation hearing. Without a showing that counsel fell below an objective standard of what reasonable counsel would have done at this proceeding, there can be no showing that appellant was prejudiced. Without knowing what Savage would have testified to, there is no way to analyze whether the outcome may have been different.
 {¶ 49} Appellant has failed to show that original counsel was ineffective, nor has he shown that he was prejudiced by counsel's deficiency.
 {¶ 50} Accordingly, appellant's third assignment of error is without merit.
 {¶ 51} The judgment of the trial court is hereby affirmed.
Vukovich, J., concurs.
Waite, J., concurs.